[No. 14377. In Bank. — May 6, 1892.]

## J. B. COWDEN, APPELLANT, v. THE PACIFIC COAST STEAMSHIP COMPANY, RESPONDENT.

ADMIRALTY JURISDICTION — DISCRIMINATION IN FREIGHT RATES — ACTION FOR DAMAGES. — An action to recover damages for a discrimination in freight rates by a common carrier of freight by vessel between San Francisco and San Diego, *via* the Pacific Ocean, is within the exclusive admiralty jurisdiction of the federal courts, and the state superior court has no jurisdiction of such action, whether it be considered as one of contract or of tort, if no common-law cause of action is stated.

ID. — VOYAGE UPON HIGH SEAS — CONTROL OF CONGRESS. — The voyage of a carrier, made upon the high seas, even though the ports of departure and destination are in the same state, is under the exclusive control and and regulation of Congress. It is only the internal commerce and navigation of a state that is under the control and regulation of the state.

ID. — COMMON-LAW CAUSE OF ACTION — INSUFFICIENT PLEADING — EXCESSIVE CHARGE — DISCRIMINATION. — A complaint in an action by a shipper against a carrier, which substantially alleges that for the same quantity and character of freight the plaintiff was charged a greater amount for transportation from the same point than another merchant, but which does not allege that the charge to the plaintiff was unreasonable and excessive, does not state a cause of action at common law, and an allegation of discrimination or inequality is not the equivalent of an allegation of an excessive charge.

ID. — COMMON-LAW DUTY OF CARRIER — REASONABLE CHARGE — EVI-
DENCE. — Under the common law, a carrier is under no obligation to
treat all customers equally, but he may carry for favored individuals at
an unreasonably low rate, or even *gratis*, the law requiring only that he
shall not charge any more than is reasonable. The fact that the carrier
charges others less is only evidence tending to show that the charge is
unreasonable.

APPEAL from a judgment of the Superior Court of San
Diego County.

The facts are stated in the opinion of the court.

*L. L. Boone*, for Appellant.

A carrier by vessel upon the high seas between ports
within the United States is subject to the same duties
and liabilities which attach to the capacity of common
carrier as a carrier by land, except so far as the com-
mon law has been modified by statute. (*King* v. *Shep-
hard*, 3 Story, 349; *N. J. Steam Nav. Co.* v. *Merchants'
Bank*, 6 How. 428; *Pearson* v. *Duane*, 4 Wall. 615; *Elliott*
v. *Russell*, 10 Johns. 1; 6 Am. Dec. 306; *Menacho* v. *Ward*,
27 Fed. Rep. 528; *Bennett* v. *Peninsula etc. Steamship Co.*,
6 Com. B. 448.) Under the common law, it is the duty
of a carrier to receive and carry goods for all persons
alike, without injurious discrimination as to terms, —
that the rates must not only be reasonable, but equal
when the conditions are substantially the same. (*Scho-
field* v. *Lake Shore R'y Co.*, 43 Ohio St. 571; 54 Am. Rep.
846; *Samuels* v. *L. & N. R. R. Co.*, 31 Fed. Rep. 57;
*Bayles* v. *Kansas Pac. R. R. Co.*, 13 Col. 181; *Root* v. *L.
I. R. R. Co.*, 114 N. Y. 300; 11 Am. St. Rep. 643; *A. T.
& S. Fé R. R. Co.* v. *D. & R. R. R. Co.*, 110 U. S. 667;
*Ragan* v. *Aiken*, 9 Lea, 609; 42 Am. Rep. 686; *Railway
Co.* v. *People*, 56 Ill. 365; 8 Am. Rep. 690; *Railway Co.*
v. *People*, 67 Ill. 11; 16 Am. Rep. 599; *Messenger* v. *R. R.
Co.*, 36 N. J. L. 407; 13 Am. Dec. 457; *McDuffee* v. *R. R.
Co.*, 52 N. H. 430; 13 Am. Rep. 72; *Audenried* v. *R'y Co.*,
68 Pa. St. 370; 8 Am. Rep. 195; *Shipper* v. *R'y Co.*, 47
Pa. St. 338; *Sandford* v. *R'y Co.*, 24 Pa. St. 378; 64 Am.
Dec. 667; *Express Co.* v. *Maine Cent. R. R. Co.*, 57 Me.

188; *R. R. Commissioners* v. *Portland R. R. Co.*, 63 Me. 269; 18 Am. Rep. 208; *St. Louis, A. & T. H. R. Co.* v. *Hill*, 14 Bradw. 578; *Dinsmore* v. *R'y Co.*, 2 Fed. Rep. 465; *Hays* v. *Penn. R. R. Co.*, 12 Fed. Rep. 309; *Vincent* v. *R'y Co.*, 49 Ill. 33; *State* v. *R. R. Co.*, 48 N. J. L. 407; *Erie & N. E. R. R. Co.* v. *Casey*, 26 Pa. St. 287; *Kinsley* v. *Buffalo R. R. Co.*, 37 Fed. Rep. 181; 1 Wood on Railroads, 563–565.) Conceding that the defendant had the right to fix its rates, still when it does fix them it must have no regard to persons, and make them the same to all in like condition. Contracts for rebates, or to make the rates lower than the regular rates, are lawful unless they confer or attempt to confer an exclusive privilege upon the shipper. (*Christie* v. *R'y Co.*, 94 Mo. 453; *McNees* v. *R'y Co.*, 22 Mo. App. 224; *Bayles* v. *Kansas Pacific R. R. Co.*, 13 Col. 181; 2 Rhorer on Railroads, sec. 1375.) The vessel, having been engaged in business wholly between *termini* in this state, and the whole transaction having been begun and finished here, was engaged in neither foreign nor interstate commerce, so far as its duties to the public as carrier were concerned. It was a proper subject of state legislation. (See 1 Kent's Com., 12th ed., 439, note; *Munn* v. *Illinois*, 94 U. S. 135; *Peik* v. *R. R. Co.*, 94 U. S. 177; *Chicago R. R. Co.* v. *Iowa*, 94 U. S. 163.) The states may regulate commerce in those matters which are of local concern, in the absence of action by Congress, although such regulation may indirectly or incidentally affect foreign or interstate commerce. (*Smith* v. *Alabama*, 124 U. S. 465; *Ouachita Packet Co.* v. *Aiken*, 121 U. S. 444; *Miller* v. *Mayor*, 109 U. S. 385; *Trans. Co.* v. *Parkersburg*, 107 U. S. 691; *Escanaba Co.* v. *Chicago*, 107 U. S. 678; *Packet Co.* v. *Catlettsburg*, 105 U. S. 559; *R. R. Co.* v. *Fuller*, 17 Wall. 560; *Cooley* v. *Philadelphia*, 12 How. 299; *The License Cases*, 5 How. 504; *Sherlock* v. *Alling*, 93 U. S. 99.)

*Luce & McDonald*, for Respondent.

The court has no jurisdiction of the subject-matter of this action. Whether it be considered in tort or an ac-

tion of *assumpsit*, it is based upon and arises solely from the contract on the part of the defendant to carry freight between the points referred to, and its duties arising from such contract.   In either case it arises from a maritime contract solely, and courts of admiralty alone have jurisdiction thereof.   (U. S. Rev. Stats., sec. 711; Desty's Federal Procedure, 60, 61; *New Jersey etc. Co.* v. *Merchants' Bank*, 6 How. 344; *Morewood* v. *Enequist*, 23 How. 491; *The Yankee* v. *Gallagher*, McAll. 467; *Steele* v. *Thatcher*, 1 Ware, 467; *Banta* v. *McNeil*, 5 Ben. 84; *Church* v. *Shelton*, 2 Curt. 271; *The Spartan*, 1 Ware, 149; *Ins. Co.* v. *Dunham*, 11 Wall. 1; *Bark San Fernando* v. *Jackson*, 12 Fed. Rep. 341; *The Fifeshire*, 11 Fed. Rep. 743; *Lord* v. *Steamship Co.*, 102 U. S. 543; *Carpenter* v. *Johnson*, 1 Cliff. 633; Desty's Federal Procedure, 57.)   The contention that the jurisdiction of the state court is saved by the terms of section 711 of the Revised Statutes is untenable, as upon the facts alleged in the complaint no common-law right or remedy ever existed.   The common-law right was based on the rate charged being unreasonable.   The simple fact of there being a discrimination did not give a cause of action.   (3 Am. & Eng. R. R. Cas. 602; *Fitchburg R. R. Co.* v. *Gage*, 12 Gray, 393; *Sargent* v. *Boston and L. R. Corp.*, 115 Mass. 416–422; *Johnson* v. *P. & P. R. R. Co.*, 16 Fla. 623; 26 Am. Rep. 731; *Menacho* v. *Ward*, 27 Fed. Rep. 529, and notes; *Ex parte Benson*, 18 S. C. 38; 44 Am. Rep. 564; *New Jersey Steam Navigation Co.* v. *Merchant's Bank*, 6 How. 344; *Mich. Cent. R. R. Co.* v. *Hale*, 6 Mich. 243; *Audenried* v. *Philadelphia etc. R. R. Co.*, 68 Pa. St. 370; 8 Am. Rep. 195; *Bankard* v. *Baltimore etc. R. R. Co.*, 34 Md. 197; *N. E. Express Co.* v. *Maine Cent. R. R. Co.*, 57 Me. 188; *Hersh* v. *Northern Cent. R'y Co.*, 74 Pa. St. 181; *Chicago etc. R. R. Co.* v. *People*, 67 Ill. 11; 16 Am. Rep. 599; *McNees* v. *R'y Co.*, 22 Mo. App. 224.)

GAROUTTE, J. — This is an action brought to recover damages of defendant for a discrimination in freight rates.   A demurrer to the complaint was interposed,

upon the ground that the court had no jurisdiction of the subject-matter of the action, and that no cause of action was stated. The demurrer was sustained, and the ruling of the court in this regard is the only matter before us for review.

The complaint substantially alleges that the defendant is a common carrier of freight by vessel between San Francisco and San Diego, *via* the Pacific Ocean; that between certain dates, plaintiff, as a merchant of San Diego, paid to defendant, according to its regular schedule of rates, large sums of money as charges for freight; that defendant charged a second merchant twelve and one half per cent less for freight of the same character and quantity than it did plaintiff; that said charges were a discrimination against plaintiff, and though often requested so to do, defendant refused to allow plaintiff such reduced rates, whereby he has been damaged in the sum of $1,674.14. The amount sought to be recovered as damages is the difference between the freight charges made to plaintiff and those made to the more favored merchant.

It would seem to be entirely immaterial, to the extent at least of the consideration of the merits of this appeal, whether the present action is one of contract or of tort. From either standpoint, it arises from a maritime contract solely, and courts of admiralty alone have jurisdiction, unless the cause comes within the reservation found in section 711 of the Revised Statutes of the United States: " The jurisdiction vested in the courts of the United States, in the cases and proceedings hereafter mentioned, shall be exclusive of the courts of the several states: . . . . 3. Over all civil cases of admiralty and maritime jurisdiction; saving to suitors in all cases the right of a common-law remedy, where the common law in competent to give it." There can be no question but that the voyage of a carrier made upon the high seas, even though the ports of departure and destination are in the same state, is under the exclusive control and regulation of Congress. It is only the internal com-

merce and navigation of a state that is under the control and regulation of the state. As was said in *Carpenter* v. *Schooner Emma Johnson*, 1 Cliff. 638: " Great mischief would inevitably result from any rule denying admiralty jurisdiction in all cases where the place of the departure of the vessel and the place of her destination are both within the same state, when any part of the voyage is upon the high seas; for every navigator knows that in many such cases nearly the whole voyage is out of the limits of the state. (See *Lord* v. *Steamship Co.*, 102 U. S. 544; *Pacific Coast Steamship Co.* v. *Railroad Commissioners*, 18 Fed. Rep. 10.)

It follows from the foregoing authorities, that plaintiff has no standing in the courts of this state, unless his rights are reserved to him under the reservation of the Revised Statutes, previously quoted. In other words, has he a cause of action at common law against the defendant, under the facts of his complaint? The gist of the complaint is, that for the same quantity and character of freight plaintiff was charged a sum twelve and one half per cent greater for transportation from the same point than the other merchant. Respondent insists that at common law the right of action was based upon the rate charged being unreasonable and excessive in itself, and that a mere discrimination, as disclosed in this case, gave no cause of action; that no wrong was committed if the charge was reasonable for the service, and there being no wrong, no remedy was demanded. Appellant insists that at common law it is the duty of the carrier to "receive and carry goods for all persons alike, and that the rates must not only be reasonable, but equal when the conditions are substantially the same." It will thus be seen that the merits of this appeal will be concluded by a determination as to what is the common law upon this question; and that is a matter of some difficulty of solution, owing to the divergent views expressed upon the subject by the various courts of this country. This divergence of opinion among the courts has undoubtedly been caused to some extent by the fact that for more

than fifty years the courts of England have had no occasion to expound the common law upon the subject, common carriers, especially railway companies, having been placed entirely under the control of the statute law. In this country, to some extent, there is a lack of direct authority upon the question, owing to the fact that constitutional and legislative provisions are common in nearly all the states of the Union, prohibiting common carriers from practicing discrimination in their rates of toll.   And while these statutory and constitutional provisions have been regarded and incidentally declared to be reiterations of the common law by many courts of this country, sound authority upon which to base such declarations is wanting in the books.   The fundamental and statute law of the various states upon the subject appears to have been founded upon the principles embodied in the early acts of Parliament pertaining to the conduct and control of railways as common carriers, rather than upon the common law of England.   Indeed, we have been able to obtain but few direct adjudications from English courts upon the question, owing to the fact that it would seem the business of inland common carriers in that country was not a matter of great concern until railroads were operated; and immediately subsequent to that great epoch in the world's progress, statutory enactments followed, entirely taking away from the courts the necessity of any further application of the common-law rights and remedies. If the common law were as appellant here contends it to be, there would have been no necessity for Parliament to have enacted these stringent " equality clauses," as they are termed.   It appears that this principle of equality of charges arose from the necessity of the times, — a necessity created by the operation of railroads, which swallowed up and destroyed all other common carrier systems of England, and thereby created a monopoly of the business, and a power for wrong that at once demanded the restrictions of legislative enactments.   This conclusion is fully borne out by the language of Mr. Justice Blackburn in *Great Western R'y Co.* v. *Sutton,* 4

Eng. & Ir. App. 238, wherein he said: "I think it appears from the preamble of the 90th section of the Railways Clauses Consolidation Act, 1845, that the legislature was of opinion that the changed state of things arising from the general use of railways made it expedient to impose an obligation on railway companies acting as carriers beyond what is imposed on a carrier at common law.   And if this be borne in mind, I think the construction of the proviso for equality is clear, and is, that the defendant may, subject to the limitations in their special acts, charge what they think fit, but not more to one person than they, during the same time, charge to others under the same circumstances.   And I think it follows from this that if the defendants do charge more to one person than they, during the same time, charge to others, the charge is, by virtue of the statute, extortionate.   And I think the rights and remedies of a person made to pay a charge beyond the limit of equality imposed by the statute on railway companies acting as carriers on their line must be precisely the same as those of a person made to pay a charge beyond the limit imposed by the common law on ordinary carriers, as being more than was reasonable.   The mode of establishing that the demand is extortionate differs in the two cases. Where it is sought to prove that the charge is unreasonable, and therefore extortionate, the fact that another was charged less is only material as evidence for the jury, tending to prove that the reasonable charge was the smaller one.   When it is sought to show that the charge is extortionate, as being contrary to the statutable obligation to charge equally, it is immaterial whether the charge is reasonable or not; it is enough to show that the company carried for some other person or class of persons at a lower charge during the period throughout which the party complaining was charged more under the like circumstances."

It is not the purpose of the court to review the authorities of this country upon the question under discussion.   For the reasons previously suggested, the

matter was only indirectly involved in the great major-
ity of them, and as authority upon the subject they are
weakened to that extent.

The case of *Scofield* v. *R'y Co.*, 43 Ohio St. 571, 54
Am. Rep. 846, is the leading case in the United States
supporting appellant's contention, and it is upon this
case that he says "he has pinned his faith and hung his
hope." The case of *Johnson* v. *Pensacola and Perdido R. R.
Co.*, 16 Fla. 623, 26 Am. Rep. 731, is the leading case in
this country holding to the contrary view, and the opin-
ion of the learned judge in the Scofield case does not
appear to overrule the doctrine there declared, but would
seem to look to the statute law of Ohio for support, rather
than to the common law. It says, in speaking of the
Florida case: "Reliance is placed on the doctrine that
discrimination is not necessarily unlawful, and that all
the freighter is entitled to is a reasonable rate, not neces-
sarily equal to all; and in the absence of any statute to
the contrary, we are not inclined to question the correct-
ness of these decisions."

The facts in the Florida case appear to be practically
identical with the facts of this case. Florida had no
statutory law upon the subject of the regulation of com-
mon carriers, and hence, as here, the merits of the case
rested upon the determination as to what was the com-
mon law upon the subject. In this case, the ancient as
well as the modern authorities are ably reviewed, and
the court says: "Our conclusions are, that as against a
common or public carrier, every person has the same
right; that in all cases where his common duty controls,
he cannot refuse A and accommodate B; that all — the
entire public — have the right to the same *carriage for
a reasonable price, and at a reasonable charge for the ser-
vices performed;* that the commonness of the duty to *carry
for all* does not involve a commonness or equality of com-
pensation or charge; that all the shipper can ask of a
common carrier is, *that for the service performed he shall
charge no more than a reasonable sum to him;* that whether
the carrier charges another more or less than the price

charged a particular individual may be a matter of evidence in determining whether a charge is too much or too little for the service performed; and that the difference between the charges cannot be the measure of damages in any case, unless it is established by proof that the smaller charge is the true, reasonable charge, in view of the transportation furnished, and that the higher charge is excessive to that degree." The court also says: " In the last edition of Story on Bailments we find the rule of the common law thus stated: 'At common law, a common carrier of goods is not under any obligation to treat all customers equally. He is bound to accept and carry for all upon being paid a reasonable compensation. But the fact that he charges less for one than for another is only evidence to show that a particular charge is unreasonable; nothing more. There is nothing in the common law to hinder a carrier from carrying for favored individuals at an unreasonably low rate, or even *gratis.*' "

By reason of the variance which exists in the views of the courts of this country as to what is the common law upon this subject, it would seem that the adjudications of the common-law courts of England upon such a matter should have pre-eminent and controlling weight with the courts of the various states.

In the case of *Great Western R. R. Co.* v. *Sutton,* 4 Eng. & Ir. App. 238, to which reference has already been made, Mr. Justice Blackburn, in a very luminous opinion, addressed, in part, directly to this question, said: "At common law, a person holding himself out as a common carrier of goods was not under any obligation to treat all customers equally. The obligation which the common law imposed upon him was to accept and carry all goods delivered to him for carriage according to his profession (unless he had some reasonable excuse for not doing so), on being paid a *reasonable* compensation for so doing; and if the carrier refused to accept such goods, an action lay against him for so refusing; and if the customer, in order to induce the carrier to

perform the duty, paid, under protest, a larger sum than was reasonable, he might recover back the surplus beyond what the carrier was entitled to receive, in an action for money had and received, as being money extorted from him.   But the fact that the carrier charged others less, though it was evidence to show that the charge was unreasonable, was no more than evidence tending that way.   There was nothing in the common law to hinder a carrier from carrying for favored individuals at an unreasonably low rate, or even *gratis.*   All that the law required was, that he should not charge any more than was reasonable."

The learned justice, in his opinion, clearly indicates that the prime object of the railway equality clauses, enacted by Parliament, was to cover the exact case of injury by discrimination in freights, such as is claimed by plaintiff in this record.

During the progress of the argument in *Baxendale v. E. C. R'y Co.,* 4 Com. B. 78, Justice Byles said: "I know no common-law reason why a carrier may not charge less than what is reasonable to one person, or even carry him free of all charge."

For the foregoing reasons, the court concludes that the complaint is deficient in not stating that the charge to plaintiff was unreasonable; and that the allegation of discrimination or inequality is not the equivalent of an allegation of an excessive charge.

Let the judgment be affirmed.

McFARLAND, J., PATERSON, J., and HARRISON, J., concurred.