## SOUTHERN PAC. CO. v. CALIFORNIA ADJUSTMENT CO.*

(Circuit Court of Appeals, Ninth Circuit. November 6, 1916.)

1. CONSTITUTIONAL LAW ⬤═½, New, vol. 4 Key-No. Series—CARRIERS—STATE REGULATION OF RATES—PARTIAL INVALIDITY.

Const. Cal. art. 12, § 21, prior to its amendment in 1911, provided: "No discrimination in charges or facilities for transportation shall be made by any railroad * * * company between places or persons, or in the facilities for the transportation of the same class of freight or passengers within this state, or coming from or going to any other state. Persons and property transported over any railroad * * * shall be delivered at any station * * * at charges not exceeding the charges for the transportation of persons and property of the same class, in the same direction, to any more distant station. * * *" Held that, conceding that the first clause might be held invalid as applying to interstate commerce, its invalidity could not be imputed to the second clause, which contained no reference to the other, or to interstate commerce, and must be construed to apply only to intrastate commerce.

2. CARRIERS ⬤═202—DISCRIMINATION IN RATES—RIGHT OF ACTION BY SHIPPER.

Where a state Constitution or statute prohibits carriers from discriminating in rates by charging a higher rate for a short than for a long haul, a shipper, who has been discriminated against in violation of such provision, has a right of action to recover the excess paid by him over the long haul rate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915; Dec. Dig. ⬤═202.]

3. CARRIERS ⬤═202—DISCRIMINATION IN RATES—RIGHT OF ACTION BY SHIPPER.

By St. Cal. 1909, p. 499, St. 1911, p. 13, and St. 1911 (Ex. Sess.) p. 18, a person injured by a carrier by charging a higher rate for a short than for a long haul, in violation of their provisions, is expressly given a right of action to recover his damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915; Dec. Dig. ⬤═202.]

4. CARRIERS ⬤═12(3)—CONSTITUTIONAL LAW ⬤═298(2)—DUE PROCESS OF LAW —DEPRIVATION OF PROPERTY—STATE REGULATION.

A provision of a state Constitution prohibiting common carriers from charging more for a short than for a long haul does not force the adoption by a carrier of unreasonably low rates to competitive points, and is not in violation of the federal Constitution, as depriving it of its property without due process of law, because, if the carrier voluntarily adopts

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied February 13, 1917.

such rates, it is compelled to make corresponding rates to intermediate points.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 9, 15–20; Dec. Dig. ☞12(3); Constitutional Law, Cent. Dig. § 847; Dec. Dig. ☞298(2).]

**5. CARRIERS ☞202—EXCESSIVE CHARGES—ACTION TO RECOVER.**

Payments made to a railroad company for freight charges are payments under compulsion, and if in excess of lawful rates the excess may be recovered, although no protest was made at the time of payment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915; Dec. Dig. ☞202.]

**6. CARRIERS ☞12(3)—DISCRIMINATION IN RATES—STATE REGULATION.**

Const. Cal. art. 12, § 21, as amended October 10, 1911, contains the provision of the old section prohibiting carriers from charging a higher rate for a short than for a long haul, but further provides that on application a carrier "may in special cases after investigation" be authorized by the state Railroad Commission to charge less for a longer than for a shorter haul, and that the Commission may prescribe the extent to which the carrier may be relieved from the prohibition. *Held,* that orders of the Commission permitting railroads to file schedules with applications for desired changes in rates, and to continue rates then in force pending investigation, did not legalize rates subsequently charged in violation of the constitutional prohibition; it not appearing that the Commission ever investigated or approved such discriminations.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 9, 15–20; Dec. Dig. ☞12(3).]

**7. CARRIERS ☞12(3)—POWERS OF LEGISLATURE—CONSTITUTIONAL LIMITATION.**

A further provision of such constitutional amendment, conferring upon the Legislature plenary power to confer on the Railroad Commission additional powers "which are not inconsistent with the powers conferred * * * in this Constitution," cannot be construed to authorize the Legislature to confer power on the Commission to relieve a carrier from the long and short haul provision of section 21, otherwise than in the manner therein prescribed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 9, 15–20; Dec. Dig. ☞12(3).]

**8. CARRIERS ☞202—EXCESSIVE CHARGES—RIGHT OF ACTION FOR RECOVERY.**

Public Utilities Act Cal. (St. 1911 [Ex. Sess.] p. 18) § 71, which provides that when complaint is made of any rate or charge, and the Commission has found after investigation that the rate or charge was excessive, it may order reparation, does not apply to a rate charged by a carrier in violation of the long and short haul clause of the state Constitution, which presents no question for determination by the Commission, but such case is governed by section 73(a) of the act, which gives a right of action for damages or injury resulting from the violation by any public utility of any provision of the Constitution or statutes of the state.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915; Dec. Dig. ☞202.]

Ross, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action at law by the California Adjustment Company against the Southern Pacific Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 226 Fed. 349.

The plaintiff in error seeks to reverse a judgment of the court below, rendered in favor of the defendant in error for the sum of $3,928.01. The parties

will be herein named plaintiff and defendant, as in the court below. The complaint contains 120 counts; each being on a claim assigned to the plaintiff, and each alleging that the assignors of the plaintiff sent various shipments over the defendant's railroad line from San Francisco or Los Angeles to certain intermediate stations, for which they were charged a higher rate than the charge then made by the defendant for transportation in the same direction on the same amount and class of property from the point of shipment to Los Angeles or San Francisco. The amount for which judgment was demanded on each count was the difference between the greater charge for the short haul and the lesser charge for the long haul in the same direction. The counts in the complaint fall into two groups: First, the counts upon the charges collected prior to October 10, 1911, the date when article 12 of the California Constitution was amended; and, second, counts upon the charges collected after that date.

Section 21, art. 12, as it existed prior to the amendment of October 10, 1911, was as follows: "No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, or in the facilities for the transportation of the same classes of freight or passengers within this state, or coming from or going to any other state. Persons and property transported over any railroad, or by any other transportation company or individual, shall be delivered at any station, landing, or port, at charges not exceeding the charges for the transportation of persons and property of the same class, in the same direction, to any more distant station, port, or landing. Excursion and commutation tickets may be issued at special rates."

As amended on October 10, 1911, section 21 reads as follows: "No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, or in the facilities for the transportation of the same classes of freight or passengers within this state. It shall be unlawful for any railroad or other transportation company to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance, or to charge any greater compensation as a through rate than the aggregate of the intermediate rates; Provided, however, that upon application to the Railroad Commission provided for in this Constitution such company may, in special cases, after investigation, be authorized by such Commission to charge less for longer than for shorter distances for the transportation of persons or property, and the Railroad Commission may from time to time prescribe the extent to which such company may be relieved from the prohibition to charge less for the longer than for the shorter haul. * * *"

Section 22 contains the following: "No provision of this Constitution shall be construed as a limitation upon the authority of the Legislature to confer upon the Railroad Commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the Railroad Commission in this Constitution, and the authority of the Legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this Constitution. The provisions of this section shall not be construed to repeal in whole or in part any existing law not inconsistent herewith, and the 'Railroad Commission Act' of this state, approved February 10, 1911, shall be construed with reference to this constitutional provision and any other constitutional provision becoming operative concurrently herewith. And the said act shall have the same force and effect as if the same had been passed after the adoption of this provision of the Constitution and of all other provisions adopted concurrently herewith, except that the three commissioners referred to in said act shall be held and construed to be the five commissioners provided for herein."

As to the first group of claims—that is, those on charges collected prior to October 10, 1911—it was claimed by the plaintiff, and held by the court below, that the Commission was powerless to fix, and the carrier was powerless to

charge, rates in contravention of the prohibition of the Constitution, and that, if the Commission assumed to fix such rates, the act was void, and cast no obligation upon the carrier to obey its order, and afforded no protection for its act. As to the second class of claims, it was claimed by the plaintiff, and ruled by the court below, that when the amendment of October 10, 1911, took effect, all rates violative of the long and short haul clause in section 21, art. 12, as then amended, still remained illegal to the extent that the greater charge for the shorter distance exceeded the lesser charge for the greater distance, and that the defendant could not be relieved from the illegality unless it filed a petition for such relief, and an investigation was had by the California Commission, and the extent was prescribed to which it might be relieved from the prohibition against discrimination between long and short hauls, and that, pending such determination of the Commission, the rates existing on October 10, 1911, which were violative of the amended section 21, furnished ground of action for the collection of excessive rates in favor of any one who paid them.

Henley C. Booth, Frank B. Austin, and George D. Squires, all of San Francisco, Cal. (Wm. F. Herrin, of San Francisco, Cal., of counsel), for plaintiff in error.

Hoefler, Cook, Harwood & Morris and Alfred J. Harwood, all of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The defendant contends that the constitutional provision as it existed from 1879 until October 10, 1911, is invalid, because in terms it attempts to regulate interstate commerce, and the attempt so to regulate interstate commerce is so intermingled with the other provisions that it cannot be presumed that the section would have been adopted if the invalidity of the first portion thereof had been known, and that therefore the whole section falls. It is true that the first clause of section 21 expressly refers to freight and passengers within the state, or coming from or going to any other state, and as to such freight and passengers it prohibits discrimination in charges or facilities for transportation. Conceding that that clause of the section may be held invalid as applying to interstate commerce, its invalidity cannot be imputed to the second clause, or the long and short haul clause, for that portion of the section does not depend upon or refer to the first clause, and it contains no reference to interstate commerce. No ground is perceived for holding that provision unconstitutional. It was unnecessary to its validity that it should contain in express terms a limitation of its provisions to the borders of the state. It is sufficient if it may be so construed.

The decision in Wabash, etc., Ry. Co. v. Illinois, 118 U. S. 557, 7 Sup. Ct. 4, 30 L. Ed. 244, cited by defendant, does not, we think, sustain its contention. That was a case in which the Supreme Court held unconstitutional, as interfering with interstate commerce, a provision of the statute of Illinois not unlike the long and short haul provision of the Constitution of California. But the Supreme Court held the act unconstitutional for the express reason that the Supreme Court of Illinois, in construing it, had given it an interpretation which made it

apply to commerce between the states, a construction which the Supreme Court of the United States declared itself bound to accept. But that court said:

"It might admit of question whether the statute of Illinois, now under consideration, was designed by its framers to affect any other class of transportation than that which begins and ends within the limits of the state."

In the Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, the court held an act addressed to all common carriers engaged in interstate commerce, imposing a liability on them in favor of any of their employés, whether the employés were engaged in interstate commerce or not, of necessity includes subjects wholly outside the power of Congress. The court held the whole act unconstitutional, and was moved thereto by two considerations: First, because the provisions of the statute were dependent and indivisible; and, second, because to give effect to the act only so far as it was addressed to interstate commerce would be to discriminate between the states and the territories and the District of Columbia. The court said:

"Where a statute contains provisions which are constitutional and others which are not, effect may be given to the legal provisions by separating them from the illegal. But this applies only to a case where the provisions are separable, and not dependent one upon the other, and does not support the contention that that which is indivisible may be divided. Moreover, even in a case where legal provisions may be severed from those which are illegal, in order to save the rule applies only where it is plain that Congress would have enacted the legislation with the unconstitutional provisions eliminated."

In Attorney General v. Rutland R. R. Co., 86 Vt. 328, 85 Atl. 654, cited by the defendant, the court had under consideration a statute which related to the right of railroads to charge demurrage on freight cars held by a consignee for the purpose of unloading, the prohibition of the statute being that no railroad doing business in the state should charge, collect, or receive any demurrage charge on freight received at any station in the state until four days after notification to the consignee. The court, in view of the fact that a freight car might concurrently be an instrument of interstate and intrastate commerce so frequently as to be a matter proper of notice in determining the question which was presented, and that the statute could not be applied to local traffic, without in many instances directly affecting interstate traffic, held that the invalid portion of the statute could not be eliminated without striking out or inserting words. The court said:

"The effect is not to be determined on the basis of striking out or disregarding some of the words in the statute, nor by inserting others not there. It is not within the judicial province to give the words used a broader or a narrower meaning than they were manifestly intended to have, in order to bring the scope of the statute within the constitutional power of the Legislature to enact."

In the case at bar, in order to give effect and validity to the long and short haul clause, it is unnecessary to disregard words, or to insert words, or to broaden or narrow the meaning of the terms used. To the argument that the people would not have adopted a constitutional provision against discrimination, if they had known that it could apply only to intrastate traffic, the answer is that, since the people admittedly

realized the evils of discrimination, it may be assumed that they would have sought to correct as much of that evil as lay in their power, and would have adopted a provision which would at least prevent discrimination on traffic within the borders of their state.

[2] It is contended that the plaintiff had no right of action for the recovery of the difference between the greater charge for the short haul and the lesser charge for the long haul, because no such right of action existed at common law, and no such right of action has been conferred by the Constitution or statutes of California. The defendant cites the case of Cowden v. Pacific Coast S. S. Co., 94 Cal. 470, 29 Pac. 873, 18 L. R. A. 221, 28 Am. St. Rep. 142, a case in which the plaintiff sought to recover damages for discrimination in freight rates by sea between San Francisco and San Diego, alleging that the steamship company had favored a certain other shipper by charging him 12½ per cent. less than it did the plaintiff for freight on the same character and quantity of goods. The court, in view of the fact that there was no statutory or constitutional provision relating to the matter, and that there was nothing in the common law to hinder a carrier from carrying for favored individuals at an unreasonably low rate, or even gratis, and the fact that the plaintiff had not alleged that the charge made was unreasonable, held that the plaintiff had no cause of action. That conclusion was influenced largely by the decision in Great Western R. R. Co. v. Sutton, 4 Eng. & Ir. App. 238, a case in which Mr. Justice Blackburn had said that at common law a person holding himself out as a common carrier of goods was not under any obligation to treat all customers equally, and that all that the law required was that he should not charge any more than was reasonable. But in that case the court had under consideration the effect upon the common law of an act of Parliament fixing charges for railroad carriage and requiring uniformity of freight rates for goods of like description and quantity conveyed along the railway under like circumstances. The action was for money had and received to recover charges alleged to have been improperly made against the plaintiff. Mr. Justice Blackburn said:

"The defendants may, subject to the limitations of their special acts, charge what they think fit, but not more to one person than they, during the same time, charge to others under the same circumstances. And I think it follows from this that if the defendants do charge more to one person than they, during the same time, charge to others, the charge is, by virtue of the statute, extortionate. And I think that the rights and remedies of a person made to pay a charge beyond the limit of equality imposed by the statute on railway companies acting as carriers on their line must be precisely the same as those of a person made to pay a charge beyond the limit imposed by the common law on ordinary carriers as being more than was reasonable."

This quotation from the opinion in that case is directly in point in the present case, and it marks the vital distinction between Cowden v. Pacific Coast S. S. Co., and the case at bar. In the case at bar the obligation to refund is not based upon the common-law rule against unreasonable charges, but is based upon the common-law rule which requires the repayment of money which has been received in violation of an express statutory obligation, as in the case of Great Western Railway Co. v. Sutton. In harmony with this view is Louisville & N.

R. R. Co. v. Walker, 110 Ky. 961, 63 S. W. 20, in which the court held that a railroad company which charges more for a short than for a long haul, in violation of the constitutional provisions of that state, is liable to the shipper for the excess charged, "as he whose money is taken from him illegally is to that extent damaged." And in Louisville & Nashville Rd. Co. v. Eubank, 184 U. S. 27, 22 Sup. Ct. 277, 46 L. Ed. 416, the court assumed without question the right of the plaintiff to sue for and recover the excess of payments made under like circumstances as in the case last cited from Kentucky.

The difference between the case at bar and Penna. R. R. Co. v. International Coal Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315, and Knudsen & Co. v. M. C. Ry., 148 Fed. 969, 79 C. C. A. 46, is that in those cases the damage to the plaintiff did not appear from the act of discrimination itself; the court holding that the fact that some other shipper was charged less than the lawful rate did not entitle the plaintiff to have its property transported for the same unlawful rate, and that the measure of damages did not appear upon proof alone of the discrimination. In the case at bar the measure of damages does distinctly appear. The effect of the constitutional provision is to fix a measure of charge and that measure is the charge which is actually made for the longer haul. Any charge in excess of that for a shorter haul is by the amount of the excess illegal, and each violation of that provision furnishes the measure of the shipper's damage therefor.

[3] In addition to stating a cause of action under the common law, we think that the complaint states an action for damages under the statutes of California. Act 1909 (Laws 1909, p. 499); Act 1911 (Laws 1911, p. 13); and Public Utilities Act (Laws Extra Session 1911, p. 18). The acts of 1909 and 1911 expressly prohibit discrimination of all kinds, and provide that the offending carrier shall be liable to the person or persons, firm, or corporation injured thereby for the damages sustained in consequence thereof. And the Public Utilities Act provides that if any carrier shall do any act forbidden, or declared to be unlawful by the statute, it shall be liable to the person damaged thereby for all loss, damage, or injuries sustained by such person, and that an action to recover such loss, damage, or injury may be brought in any court of competent jurisdiction. One of the rights of action expressly recognized by that act is the right of a person injured by the violation of the prohibition against charging more for the shorter than for the longer distance.

[4] It is contended that, to give effect to the long and short haul clause of the Constitution, both as it existed before 1910 and as it was after the amendment of that year, is to deprive the defendant of its property without due process of law, and to deprive it of the equal protection of the laws, since in its answer it alleged that the rates by rail between San Francisco and Los Angeles on all the commodities referred to in the complaint were through rates, which had been forced down below a reasonable rate by reason of actual water competition between the port of San Francisco and the port of Los Angeles, and that to compel the defendant to carry property to in-

termediate points at less than a reasonable rate for the service rendered, or at the said through rates, would be to require it to establish its intermediate rates at less than a reasonable compensation for the service performed, and on the trial the defendant offered to show by the testimony of its assistant general freight agent that in his opinion the rates charged to the plaintiff's assignors were reasonable for the service performed, and that the through rate was a rate less than a reasonable rate, and was compelled by actual water competition between the two ports named.

The Supreme Court has been urged, and has refused, to declare the very principle for· which the defendant here contends. On the contrary, it has held that such a provision of a state Constitution is not violative of the Fourteenth Amendment. In Louisville & Nash. Rd. Co. v. Kentucky, 183 U. S. 503, 22 Sup. Ct. 95, 46 L. Ed. 298, it was held that a state railroad corporation cannot exempt itself from the control reserved to the state by its Constitution, and if not protected by a valid contract, it cannot successfully invoke the interposition of federal courts in respect to long and short haul clauses in a state Constitution simply on the ground that the railroad is property. Said the court:

"When the citizens of Kentucky voluntarily seek and obtain a grant from the state of a charter to build and maintain a public highway in the form of a railroad, it would seem to be evident that it takes, holds, and operates its road subject to the constitutional inhibition we are considering, and is without power to challenge its validity. * * * We are unable·to see how such company can successfully contend that it can be exempted by the courts from the operation of the Constitution of the state."

The court intimated that if thereafter a Railroad Commission should fix and establish rates of a confiscatory character, the corporation would be within the protection which courts of equity have heretofore given in cases of that description. But the plain meaning of the decision is that such a constitutional provision does not force the adoption of low competitive rates, and does not deprive a carrier of its. property without due process of law, or deny it the equal protection of the laws; that it should be regarded as declaring that it is against the policy of the· state to permit a carrier to charge an unreasonably low rate to competitive points, the necessary tendency of which is to cause it to increase unjustly the rates to intermediate points. In the Intermountain Cases, 234 U. S. 476, 34 Sup. Ct. 986, 58 L. Ed. 1408, the court was asked to reconsider and overrule Louisville & N. R. R. Co. v. Kentucky, but declined to do so.

[5] We find no merit in the contention that the court below erroneously sustained a demurrer to the defense wherein the defendant pleaded that each assignor of the plaintiff paid without protest the charge complained of. The complaint had not alleged that the money was paid under protest, but it did allege that in cases where the assignors were consignees of the goods, in order to obtain possession and delivery of the same so transported by the defendant, the said consignees were compelled to pay such charges demanded by defendant, and in the answer it was admitted that the defendant would not have delivered said property to the consignees if said charges demand-

ed by defendant had not been paid. In cases where the plaintiff's assignors were consignors of the goods, the same facts were alleged and admitted. It is well settled that money paid under compulsion may be recovered, even in the absence of protest at the time of payment. Lafayette & I. Railroad Co. v. Pattison, 41 Ind. 312; Chandler v. Sanger, 114 Mass. 364, 19 Am. Rep. 367; Robinson v. Ezzell, 72 N. C. 231; Stephan v. Daniels, 27 Ohio St. 527; First National Bank v. Watkins, 21 Mich. 483. Payments made to a railroad company for freight charges, as these payments were made, are clearly payments under compulsion. In order to get the goods, the consignees were obliged to pay the charges demanded by the railroad company, and it is common knowledge that it would have been futile to dispute the charges. In Mobile & Montgomery Railway Co. v. Steiner et al., 61 Ala. 559, 595, the court, after referring to the fact that the public was left no discretion but to employ railroad companies or suffer irreparable injury, said:

"They have their established rates and charges, and these the shipper must pay, or forego their facilities and benefits. To object or protest would be an idle waste of words. The law looks to the substance of things, and does not require useless forms or ceremonies. The corporation and the shipper are in no sense on equal terms, and money thus paid to obtain a necessary service is not voluntarily paid, as the law interprets that phrase."

So in Chicago & Alton Railroad Co. v. C., V. & W. Coal Co., 79 Ill. 121, the court held that the appellees, in paying enhanced freight charges, were bound to accede to any terms the appellants might impose:

"They were under a sort of moral duress, by submitting to which appellants have received money from them which, in equity and good conscience, they ought not to retain."

In Pennsylvania R. Co. v. International Coal Mining Co., 173 Fed. 1, 97 C. C. A. 383, the court declared the principle which must apply here, when it said:

"This is not the ordinary case of a suit to recover back a sum of money which has been mistakenly paid and received, but is one where a statute has stamped the receipt of the money as unlawful."

[6] As to the shipments herein involved which moved after October 10, 1911, the defendant contends that the collection of the charges complained of is defensible on the ground that the Railroad Commission of California, pursuant to the power given it by section 15 of the act of February 9, 1911, to fix rates, made a series of orders with the intention of preserving the status of the rates then being charged by the defendant until it could be determined by the Commission whether and how far the defendant was entitled to relief. The amended section 21 of article 12 of the act of 1911, after reaffirming the long and short haul clause, added the proviso that, upon application to the Railroad Commission, the carrier—

"may in special cases, after investigation, be authorized by such Commission to charge less for longer than for shorter distances for the transportation of persons or property, and the Railroad Commission may, from time to time, prescribe the extent to which such carrier may be relieved from the prohibition to charge less for the longer than for the shorter haul."

On October 26, 1911, the Commission made an order that every railroad or other transportation company which at that time was charging a greater compensation in the aggregate for a shorter than for a longer haul over the same line might file with the Commission a schedule of such rates, and, in case it was desired to justify the same, or any of them, an application for relief from the constitutional provision. The orders of November 20, 1911, and January 16, 1912, made by the Commission, went no further than to give permission to railroads to file with the Commission for establishment such changes in rates and fares as would occur in the ordinary course of their business, "continuing under the present rate bases or adjustments higher rates or fares at intermediate points, provided that in so doing the discrimination against intermediate points is not made greater than that in existence October 10, 1911," etc., but expressly declaring:

"That the Commission does not hereby indicate that it will finally approve any rates and fares that may be filed under this permission, or concede the reasonableness of any higher rates to intermediate points, all of which rates and fares will be investigated at the hearing to be held January 2, 1912."

But it does not appear that the defendant filed such an application until December 30, 1911, or that an investigation was ever had by the Commission, or that it ever made an order finally approving any of said rates or fares. If, indeed, the orders of the Commission may be construed as expressly giving by their terms authority to continue in effect until an investigation of the rates then in existence, which deviated from the constitutional provision as to the long and short haul, it is obvious that the Commission erroneously assumed that the act of 1911 gave it the power to make such an order. The amendment of 1911 gives the power to authorize a deviation from the prohibition of the Constitution only upon the application of the carrier, and after an investigation by the Commission, for it does not, as does the act of Congress giving authority to the Interstate Commerce Commission, authorize the fixing of temporary rates pending investigation. Assuming that under such a temporary order the defendant continued to make charges forbidden by the Constitution, it would be necessary for it to show, in defending an action for the recovery of such charges, that the Commission finally approved the rates, and made them valid by an order made after an application and investigation as required by the statute.

[7] But it is said that the Legislature had power to give the Commission authority to establish rates contrary to the long and short haul provision of section 21, in the absence of the application or investigation which that section prescribes. This contention is based upon the terms of section 22 of article 12, as amended, which declares:

"No provision of this Constitution shall be construed as a limitation upon the authority of the Legislature to confer upon the Railroad Commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the Railroad Commission in this Constitution, and the authority of the Legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this Constitution."

We think it is very clear that an act authorizing the Commission to establish rates regardless of the provisions of section 21 of the amended Constitution would be inconsistent with that section. While section 22 declares that the Legislature may confer upon the Commission powers additional to those conferred upon it by the Constitution, it erects a barrier which the Legislature cannot pass, in providing that such powers must not be inconsistent with the powers conferred upon the Commission by the Constitution. The Constitution specifically points out the method whereby relief can be had from the prohibition as to the long and short haul, and it is clear that any statute which provides a method for obtaining such relief other than the method therein prescribed is inconsistent with it.

We have given careful consideration to the case of Pacific Telephone & Telegraph Co. v. Eshleman, 166 Cal. 660, 137 Pac. 1119, 50 L. R. A. (N. S.) 652, Ann. Cas. 1915C, 822, cited by the defendant to sustain its contention that in conferring powers upon the Railroad Commission the Legislature is untrammeled by any constitutional provision. The question in that case was whether the act of February 9, 1911, which conferred upon the Commission power to require a telephone company to permit a physical connection between its lines and the lines of a competing company, was a taking of private property for public use without compensation first made, in violation of the Constitution. In disposing of that question the Supreme Court used language which the defendant now relies upon, as follows:

"We regard the conclusion as irresistible that the Constitution of this state has in unmistakable language created a commission having control of the public utilities of the state, and has authorized the Legislature to confer upon that commission such powers as it may see fit, even to the destruction of the safeguards, privileges, and immunities guaranteed by the Constitution to all other kinds of property and its owners."

The decision, in other words, holds that the Legislature, in conferring powers on the Commission, is placed above and beyond the control of constitutional restrictions as they had theretofore existed. It does not follow, however, that it was placed beyond the control of the very constitutional provisions which define that power, or that in carrying out the provisions of section 22 of the amendment of 1911 the Legislature was at liberty to ignore the provisions of the section which preceded it, and which was adopted at the same time and as a part of the same amendment. This is evidently the view which was taken in the Eshleman Case, where in the opinion Mr. Justice Henshaw approved the argument "that there is the fullest * * * grant of authority to confer all kinds of additional powers, with the sole limitation that whatever additional powers may be vested by the Legislature in the Commission shall not be inconsistent with the constitutional powers conferred," meaning thereby that, while all other constitutional provisions were set aside, the Commission was held to the constitutional provision which was a part of its charter, its authority to act, and which prescribed its method of procedure.

[8] It is urged that the complaint is fatally defective for its failure to allege that the plaintiff or any of its assignors had applied to and secured from the Railroad Commission of California a reparation order based on the payment of excessive charges, and it is said that from and after March 23, 1912, when section 71 of the California Public Utilities Act became effective, one who has paid a greater charge for a given distance than the carrier was charging. for the same class of property for a greater distance over the same line of route, and who claims reparation on the ground of a violation of the long and short haul clause of the Constitution, must first apply to the Commission for, and secure, an order prescribing the amount of reparation to which he is entitled, and that until that is done the courts have no jurisdiction to entertain such a cause of action. Section 71 of the Public Utilities Act provides:

"When complaint has been made to the Commission concerning any rate, fare, toll, rental or charge for any product or commodity furnished or service performed by any public utility, and the Commission has found, after investigation, that the public utility has charged an excessive or discriminatory amount for such product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest from the date of collection; provided, no discrimination will result from such reparation."

We think that the court below properly ruled that this section has reference only to instances where the question whether the carrier had charged an excessive or discriminatory rate is dependent upon facts to be ascertained from investigation, upon evidence taken by the Commission, as in Texas & Pacific Ry. Co. v. Abilene, etc., Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, and Robinson v. B. & O. R. R. Co., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288. The Legislature, it may be presumed, did not intend that the plaintiff in such a case as this was required to do a useless and idle act. The facts in this case, if presented to the Commission, would have afforded no ground for its action. There was no occasion for the exercise of the powers lodged in the Commission as an administrative body, and there was no question of permissible discrimination based upon differences in conditions. There was nothing as to which the Commission could make a reparation order. The measure of the plaintiff's damages was fixed by the very nature of the transactions. There was no issue as to the measure of damages upon which testimony could have been taken before the Commission, as there has been none upon which testimony was in fact taken in the court below. The plaintiff's right to recover depends upon a question of law. The statute which is applicable here is section 73 (a) of the Public Utilities Act, which provides:

"In case any public utility shall do, cause to be done, or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done, either by the Constitution, any law of this state, or any order or decision of the Commission, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom."

In Southern Pacific Co. v. Superior Court of Kern Co., 27 Cal. App. 240, 150 Pac. 397, the District Court of Appeal of California, in construing these statutes, said:

"The record here shows that the demand actually was founded upon the claim that the plaintiff's assignor had been compelled to pay a charge which was illegal, in that it was in violation of the 'long and short haul' clause of the state Constitution. If the charge was thus in conflict with the Constitution, it was a charge beyond the jurisdiction of the Railroad Commission, because it was a charge that the Railroad Commission could not legalize after it was made and paid. However just the amount might seem to be—conceding that it could legalize any subsequent charges—the jurisdiction to pass upon an alleged illegal charge of this kind is necessarily vested in the courts, because the law has provided no other source of relief."

We find no error. The judgment is affirmed.

ROSS, Circuit Judge (concurring in part, and dissenting in part). I concur in the conclusion in respect to the first group of claims counted upon, and to which reference is made in the opinion of the court, and in the reasons given in support thereof.

But in respect to the conclusion reached by the majority of the court in regard to the second group of claims I am unable to concur, for the reason that, as I understand the concluding portion of section 22 of the amendment of October 10, 1911, of the Constitution of California the "Railroad Commission Act of California," approved February 9, 1911, and commonly known as "the Eshleman Act," is made valid in all of its parts by the constitutional amendment itself; it being therein expressly declared that it "shall have the same force and effect as if the same had been passed after the adoption" of the constitutional amendment, from which I conclude that all of the acts performed by the Railroad Commission, and all rates adopted by it, or recognized as just rates by it under the Eshleman Act, are by the constitutional amendment recognized as valid and continue in force until changed by the Railroad Commission. As I understand the record in the case, the rates collected by the railroad company in the second group of claims mentioned in the opinion were recognized by the Railroad Commission as just rates, and by it continued in force under the Eshleman Act, and were in force at the time of the adoption of the constitutional amendment of October 10, 1911, and are therefore valid rates until the Railroad Commission shall in pursuance of the law deem it proper to change them.