[S. F. No. 7432. In Bank.—December 14, 1916.]

NORTH ALASKA SALMON COMPANY (a Corporation), Petitioner, v. A. J. PILLSBURY et al., as the Industrial Accident Commission of the State of California, Respondents.

WORKMEN'S COMPENSATION ACT—BASIS OF EMPLOYER'S LIABILITY—LAW OPERATES ON STATUS.—The liability of an employer under the Workmen's Compensation, Insurance and Safety Act, to pay compensation to an injured employee arises from the law itself, rather than from any agreement of the parties. The law operates upon the status of employer and employee, and affixes certain rights and obligations to that status.

ID.—INJURIES HAPPENING WITHOUT STATE.—Under that act, as it existed prior to the amendment of 1915 adding section 75a thereto, the employer is not liable for, and the accident commission has no jurisdiction to allow, compensation for injuries received by an employee beyond the limits of this state, notwithstanding the contract of employment was made in this state.

ID.—EXTRATERRITORIAL OPERATION OF ACT.—The intention to make the act operative with respect to occurrences outside the state will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred from the language of the act, or from its purpose, subject matter, or history.

APPLICATION for a Writ of Certiorari to review an order of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

CLXXIV Cal.—1                    (1)

Wise & O'Connor, and Chickering & Gregory, Ira A. Campbell, and McCutchen, Olney & Willard, *Amici Curiae,* for Petitioner.

Christopher M. Bradley, for Respondents.

SLOSS, J.—*Certiorari* to review an award of the Industrial Accident Commission.

The petitioner, North Alaska Salmon Company, is a corporation engaged in the business of packing and selling salmon. Its packing operations are conducted in the territory of Alaska. Its office and principal place of business are in the city and county of San Francisco. Oscar Anderson was employed by the petitioner, under a contract made in San Francisco, for the season of 1914. He was injured while working in Alaska. The commission awarded him compensation. The only point made by the petitioner is that, at the time of Anderson's injury, the commission had no jurisdiction to allow compensation for injuries received beyond the limits of this state.

The case is before us on rehearing. Our former decision, upholding the jurisdiction of the commission, was based on the theory that the workmen's compensation law entered into and became a part of the contract of employment, and that where such contract was made in this state, the statute fixed the rights of the parties with respect to any injury arising out of the employment, wherever such injury might occur. Upon further study, we are satisfied that this view is not tenable. The liability of the employer to pay compensation arises from the law itself, rather than from any agreement of the parties. The law operates upon a status, i. e., that of employer and employee, and affixes certain rights and obligations to that status. True, the relation of employer and employee has its inception in a contract, but once the relation is created, its incidents depend not upon the agreement of the parties, but upon the provisions of the law. Our decisions upholding the validity of this legislation have emphasized, and found support in, the proposition that the statute is one regulating the rights and obligations attaching to the status of employer and employee. (*Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, 699, [10 N. C. C. A. 1, 151 Pac. 398] ; *Western Metal Co.* v. *Pillsbury,* 172 Cal. 407, [156 Pac. 491].) If the right to

compensation rested upon contract, it would seem to follow that such right would exist only in cases of employment under agreements made after the passage of the statute. But it has never been supposed that any such limitation could be upheld. There is a manifest difference between a compulsory act, like ours, and elective acts, like the Roseberry Act of 1911 [Stats. 1911, p. 796], and various statutes in other states, under which the compensation provisions are dependent upon the election or consent of the employer and employee. It may well be said that the rights declared by an elective statute have their origin and sanction in the agreement of the parties to be bound by the statute. Under a compulsory statute, however, the correlative rights and obligations are not founded upon contract. Nor do they correspond with the legal conception of a tort, since a liability is imposed without regard to the element of wrongdoing on the part of the person charged. The obligation is to be defined as a statutory one, attached by law to a given status.

The principle here involved was carefully considered and well stated by the supreme court of Alabama in *Alabama G. S. R. Co.* v. *Carroll*, 97 Ala. 126, [38 Am. St. Rep. 163, 18 L. R. A. 433, 11 South. 803]. That case turned upon the applicability of the Employers' Liability Act of Alabama, abrogating certain common-law defenses, to an action in Alabama for injuries sustained in Mississippi. The contention that the Alabama law governed because it was a part of the contract of employment (which had been made in Alabama) was met and answered by the court upon convincing grounds. The conclusion reached is summarized in these words, which are entirely applicable to the situation now before us:

"The duties and liabilities incident to the relation between the plaintiff and the defendant which are involved in this case, are not imposed by and do not rest in or spring from the contract between the parties. The only office of the contract . . . is the establishment of a relation between them, that of master and servant; and it is upon that relation, that incident or consequence of the contract, and not upon the rights of the parties under the contract, that our statute operates. The law is not concerned with the contractual stipulations, except in so far as to determine from them that the relation upon which it is to operate exists. Finding this relation the statute imposes certain duties and liabilities on the parties

to it wholly regardless of the stipulations of the contract as to the rights of the parties under it, and, it may be, in the teeth of such stipulations.'' (See, also, *Dormidy* v. *Sharon Boiler Works,* 127 Fed. 485.)

The question resolves itself, then, into one of the correct interpretation of our statute. We may assume, without undertaking to decide the point, that the legislature has power to enact a statute, providing that employers shall be liable to pay compensation to injured employees whose employment was created by this state, regardless of the place where the injury may have been sustained. So assuming, however, we are called upon to determine whether the Workmen's Compensation, Insurance and Safety Act was designed to cover any injuries other than those occurring within the boundaries of California. Ordinarily, the statutes of a state have no force beyond its boundaries. (Sutherland on Statutory Construction, 2d ed., sec. 13; Story on Conflict of Laws, 8th ed., secs. 7, 22.) Except within the domain committed to the control of the federal government, the states of the Union are ''severally sovereign, independent and foreign to each other in regard to their internal and domestic affairs.'' (*Stevens* v. *Brown,* 20 W. Va. 450, 459.) Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect. The intention to make the act operative, with respect to occurrences outside the state, will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred ''from the language of the act or from its purpose, subject matter or history.'' (*Kennerson* v. *Thames Towboat Co.,* 89 Conn. 367, [L. R. A. 1916A, 436, 94 Atl. 372]; *Gould's Case,* 215 Mass. 480, [Ann. Cas. 1914D, 372, 102 N. E. 693]; *Merrill* v. *Boston & L. R. R.,* 63 N. H. 259.) We find in the Workmen's Compensation, Insurance and Safety Act, as it read at the time of the injury for which compensation was here awarded, nothing to indicate that the compensation provisions were intended to apply to injuries occurring in foreign jurisdictions. Section 12 of the act, the section which defines the conditions upon which the right to compensation rests, simply declares that liability for the compensation provided shall exist where the given conditions concur. Nothing is said about the place of injury. Nor

is there in other portions of the act any language from which the intention to extend the operation of the statute beyond the territorial limits of the state may be inferred. On the contrary, the statute contains several provisions which may fairly be thought to manifest a contrary purpose. Thus, section 12 declares that the liability for the compensation provided shall be "in lieu of any other liability whatsoever." As was said in *Davis* v. *New York & N. E. R. Co.*, 143 Mass. 301, [58 Am. Rep. 138, 9 N. E. 815], "it must certainly be the right of each state to determine by its laws under what circumstances an injury to the person will afford a cause of action." Unquestionably the legislature of Alaska has full authority to determine the conditions upon which liability shall exist for an injury sustained within the boundaries of that territory, and this right could not be limited by the circumstance that the injured person might be a nonresident of Alaska, and in the employment of another nonresident under a contract of employment made elsewhere. It will not be supposed that the legislature of this state undertook to pass a law which would trench upon the sovereign powers of any other jurisdiction. But the Workmen's Compensation, Insurance and Safety Act would embody such attempt if it were construed in such manner as to create, to the exclusion of any other liability, a liability to pay for injuries received in another jurisdiction. In other words, the fact that the compensation provided for in the act is in lieu of any other liability whatsoever is a strong indication that the legislature had in mind only liability within the exclusive control of the legislature of this state, that is to say, liability arising from occurrences within this state. Some force is added to this conclusion by a comparison of the provisions of the act with respect to subjects other than compensation. Several of these, dealing with such matters as safety regulations, supervision of places of employment, and investigation of industrial accidents, are expressly limited in their operation to this state. (Secs. 51[6], 56, 72[a].) The provisions looking to the safety and protection of workmen and those providing for compensation are correlative and component parts of a single scheme. It appearing that the commission's authority with reference to one branch of its duties is confined to objects and events within the state, it may well be concluded that the compensation provisions were intended to be operative to no greater

extent. But whether or not much weight is to be given to this consideration, certain it is that there is nothing in the act which, by express words or clear implication, manifests an intent to have it operate extraterritorially, and that, as already stated, the settled rules of interpretation prohibit our giving it any such effect. It may be noted, in this connection, that the legislature of 1915 amended the act by adding to it a new section (75a) declaring that the commission should have jurisdiction "over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this state." (Stats. 1915, p. 1101.) This section was obviously not designed as a limitation upon the jurisdiction theretofore vested in the commission. It was intended, rather, as a grant of power. The fact that the legislature deemed it necessary to declare specifically that the jurisdiction of the commission should extend to a certain class of cases of injuries arising beyond the state is more or less significant as indicating that the law-making body itself did not consider the original statute as covering extraterritorial injuries.

The question under discussion has been considered in other jurisdictions, but the authorities are not entirely in harmony. The supreme court of Connecticut has held that the statute of that state gave a right to compensation, even though the injuries had been sustained beyond the boundaries of the state. (*Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, [L. R. A. 1916A, 436, 94 Atl. 372].) A like ruling was made by an inferior court of New Jersey. (*Deeny* v. *Wright & C. L. Co.*, 36 N. J. L. 121.) And a later decision of the supreme court of New Jersey seems to reach the same conclusion. (*Rounsaville* v. *Central R. Co.*, 87 N. J. L. 371, [94 Atl. 392].) The statutes of both New Jersey and Connecticut, however, made the scheme of compensation dependent upon the election or consent of the parties to the employment, and the decisions cited are put on the ground that the rights of the parties are contractual—a position which cannot be applied to a compulsory statute like ours. It has also been held that the New York statute gives a right of compensation for injuries sustained beyond the borders of the state. (*Spratt* v. *Sweeney & G. Co.*, 168 App. Div. 403, [153 N. Y. Supp. 505].) But the New York statute, while compulsory, is one providing for the pay-

ment of compensation out of an insurance fund, and the conclusion of the court was based upon the circumstance that the amount of premiums is calculated upon the pay-roll and number of men employed, "without regard to the fact that from time to time some of them work outside of the state." This ground of decision has no relevancy to the provisions of our law. A more recent decision is *Gooding* v. *Ott* (W. Va.), L. R. A. 1916D, 637, [87 S. E. 862], where it was held that compensation was payable under the West Virginia statute to the widow of a miner killed while working in Maryland, the mine in which he was employed being located on the boundary line between the two states. The conclusion of the court was founded upon the grounds that, the statute being elective, the rights of the parties rested upon contract, and that the particular language of the West Virginia act evidenced an intent to have the compensation provisions apply to all workmen except those "who are employed wholly without the state." On both grounds the case is readily differentiated from the one before us.

On the other hand, there is strong authority in support of the proposition that workmen's compensation statutes, in the absence of express declaration that they shall operate extra-territorially, are not to be given such effect. This has been the uniform course of ruling under the English statute (*Hicks* v. *Maxton*, 1 B. W. C. C. 150; *Tomalin* v. *S. Pearson & Son, Ltd.* [1909], 2 K. B. Div. 61; *Schwartz* v. *Indiana Rubber etc. Co.* [1912], 2 K. B. Div. 299), and the holding has been the same in Massachusetts under the act of that state. (*Gould's Case*, 215 Mass. 480, [Ann. Cas. 1914D, 372, 102 N. E. 693].)

For these reasons, we conclude that, under the statute as it read at the time of Anderson's injury the commission had no jurisdiction to award compensation.

The award is annulled.

Shaw, J., Melvin, J., Henshaw, J., Lorigan, J., and Lawlor, J., concurred.