[Civ. No. 16378. Third Dist., Sept. 6, 1977.]

MARYBELLE ARCHIBALD, Plaintiff and Appellant, v.
CINERAMA HAWAIIAN HOTELS, INC., et al.,
Defendants and Respondents.

**COUNSEL**

Friedman, Collard & Poswall, Peter E. Mills, Morton L. Friedman and Rex-Ann S. Gualco for Plaintiff and Appellant.

Munger, Tolles & Rickershauser, Ronald L. Olson, Allen M. Katz, Barbara Reeves, Swerdlow, Glikbarg & Shimer, Harry B. Swerdlow, Allan Albala, Jerome L. Levine, Gibson, Dunn & Crutcher, Irwin F. Woodland, Wayne W. Smith, Diepenbrock, Wulff, Plant & Hannegan, John V. Diepenbrock, Hardy, Erich & Brown, John Quincy Brown, Jr., Daniel A. Curry, Argue, Freston & Myers, Edwin Freston, William A. Jones, Brobeck, Phleger & Harrison, E. Judge Elderkin, William R. Irwin, McCutchen, Doyle, Brown & Enersen, David M. Balabanian,

Bruce Vanyo, Carlsmith, Carlsmith, Wichman & Case, James H. Case, Jack Halpin and Joseph T. Kiefer for Defendants and Respondents.

## OPINION

REGAN, J.—This is a plaintiff's appeal from a judgment of dismissal entered upon an order sustaining demurrers without leave to amend. The first amended complaint, to which the demurrers were sustained, is for breach of an innkeeper's duty. It contains three causes of action. It asserts a class action by plaintiff as a member of a class of persons who are citizens and residents of California and who have been guests of hotels and motels in Hawaii which are owned or operated by a multitude of named defendants who do business in California. Also included is a named travel agency and several other fictitiously named travel agencies who make reservations for California visitors at such hotels.

The first cause of action alleges that the rate charged to plaintiff for rooms in the hotels is higher than a so-called "Kamaaina" (local resident) rate, which is offered or available to residents of Hawaii. It is alleged that this is "unlawfully discriminatory." The second cause of action alleges a conspiracy among defendants in furtherance of the discriminatory acts described in the first cause of action. The third cause of action alleges that defendants "violated certain laws, statutes, rules and regulations and the policies of the State of California and engaged in unfair and deceptive acts and practices and principals [sic] contrary to the public policies of the State of California."[1]

The demurrers to all the causes of action were sustained on the ground that none set forth facts sufficient to constitute a cause of action.

Plaintiff contends that each of her three causes of action is viable in the face of general demurrers and that the trial court therefore erred. ■ In appraising the merits of plaintiff's contentions we are mindful of the fact the trial court allowed plaintiff an opportunity to amend her complaint further, but she notified the court she did not wish to do so. Under such circumstances, in determining whether or not the trial court abused its discretion in sustaining the demurrers, it must be

---

[1]Plaintiff seeks general damages in each of the three causes of action totalling $300 million and punitive damages totalling another $300 million.

presumed by us that plaintiff has stated her case as strongly as it can be stated, and all ambiguities and uncertainties will be resolved against her. (*Wilson* v. *Loew's, Inc.* (1956) 142 Cal.App.2d 183, 196 [298 P.2d 152]; *Sierra Investment Corp.* v. *County of Sacramento* (1967) 252 Cal.App.2d 339, 341 [60 Cal.Rptr. 519].)

### *The First Cause of Action*

Plaintiff contends the first cause of action is good since it alleges a breach of the common law duties of an innkeeper not to discriminate; and also, impliedly if not directly, by alleging "unlawful discrimination" it has alleged violations of constitutional rights under equal protection, privileges and immunities, and commerce clauses of the United States Constitution. To bolster these contentions, plaintiff has prepared a selective dissertation on the common law duties of an innkeeper, a short treatise on the economic doctrine of laissez-faire as it relates to the modern emphasis on equality of contract between providers and consumers, a discussion of certain state equal rights legislation pertaining to places of accommodation of travelers, a discussion of certain constitutional rights as they may pertain to residents versus travelers or nonresidents, and an exposition of the assertedly illusory distinction between "discount" and "overcharges" pertaining to hotels. Plaintiff's efforts have left us unpersuaded that the trial court erred.

It is alleged in the first cause of action that the rates charged plaintiff and members of her class are higher than those charged to residents of the State of Hawaii. It is not alleged that the rates charged Californians are different than the rates charged any person or class of persons from anywhere else in the world, nor is it alleged that the rates charged plaintiff are unreasonable or excessive. While the complaint categorizes the rate charged her and other nonresidents as a "surcharge" which is "discriminatory," the "preferential treatment" described in the complaint consists of a discount known as the "Kamaaina rate," and is so designated in the complaint. This is an unspecified rate presumably lower than the regular rate paid by all nonresidents and is illustrated by advertisements in the yellow pages of the telephone book placed by certain hotels such as "Ask about out Kamaaina rates" or "Kamaaina discounts."

Plaintiff has based her case in large part on the common law pertaining to innkeepers. She asserts there was, and is, a duty to charge exactly the same rates to everyone. Reliance is placed by plaintiff

principally on text-book authority that innkeepers must provide lodging for *all* at a *reasonable price* and that all should be served equally and without discrimination. (See Beale, The Law of Innkeepers and Hotels Including Other Public Houses, Theatres, Sleeping Cars (1906) §§ 52-55, pp. 36-38; Sherry, The Law of Inkeepers—For Hotels, Motels, Restaurants, and Clubs (1972) at pp. 23-24, 34.) However, looking at plaintiff's authorities, including cases cited and with her text-book references, we observe that the concern of the common law was and is limited to assuring each traveler freedom from unreasonably high rates. Since travel upon the highway at night was hazardous and there was little choice of lodging for the night, the common law approved restrictions upon innkeepers to insure a charge of "reasonable value" for services, to prevent them from extorting exorbitant rates. (See, e.g., *Munn* v. *Illinois* (1877) 94 U.S. 113, 125, 134 [24 L.Ed. 77, 84, 87].)

We have found no authority holding that the offering of a discount to certain clients, patrons or customers based on an attempt to attract their business is unlawful under the common law, whether the discount be for salesmen, clergymen, armed services personnel, or local residents. In fact it has been indicated in court decisions that even the common law duty to charge reasonable value for services is inapplicable where the guest is not one who might be stranded on a road in the nighttime or might otherwise be at the mercy of a single innkeeper, but rather is one who has made an advance reservation, thereby agreeing to a price before arrival. (*Baldwin* v. *Webb* (1904) 121 Ga. 364 [49 S.E. 265, 266]; *Kemper* v. *Asher's Adm'x* (1938) 272 Ky. 461 [114 S.W.2d 525, 527]; *Roche* v. *Road Driver's Ass'n. of New York* (Sup. 1905) 96 N.Y.S. 205, 206; cf. *Magee* v. *Pacific Improvement Co.* (1893) 98 Cal. 678, 680 [33 P. 772].)

Insofar as text authorities are concerned, those favored most by plaintiff recognize an innkeeper's freedom or common law right to make any reasonable charge, allowing him to frame his own schedule of rates, provided they are "reasonable." (Beale, *op. cit. supra,* §§ 241, 243, pp. 168-169, 170; Sherry, *op. cit. supra,* at pp. 433-435.)

All of the textual authorities and the case law cited by plaintiff, and other authorities we have examined, indicate to us that the common law was and is concerned with assuring that travelers will be received on a basis of equality in the sense that no one will be excluded by the device of demanding unreasonable rates or payment. We do not perceive that the common law is concerned with rates as such, except that they not be unreasonable; nor is it concerned with charges *lower* than reasonable

charges, or discounts to induce patronage from certain groups or classes. The case before us does not present any compelling or even rational reason for us to either enlarge or depart from common law principles or concerns as to innkeepers.[2]

It should be added that plaintiff's reliance on *Neptune City* v. *Avon-By-The-Sea* (1972) 61 N.J. 296 [294 A.2d 47, 57 A.L.R.3d 983], is misplaced. The court in *Neptune* held the state could not abdicate its obligation to permit equal access to public trust (beach) lands for all state residents by permitting a beach municipality to grant preferences to residents of the municipality. At issue in *Neptune* was a beach user fee system under which residents of the municipality could purchase season badges entitling them to use the beach all season, but nonresidents were only permitted to purchase daily badges. (See 294 A.2d at pp. 50, 54-55.) The *Neptune* decision is clearly distinguishable. The public trust doctrine applicable to beaches owned by the sovereign does not apply to hotels located on land which is privately owned. Although hotel owners have certain common law obligations to travelers, hotels are by no means owned in public trust like public beaches. Moreover, *Neptune* did not concern itself with any question of equal access for nonstate residents.

There is no legitimate constitutional law issue here. Plaintiff attempts to bring into play the equal protection clause, commerce clause, and the privileges and immunities clause of the United States Constitution and the so-called constitutional "right to travel". ■ These constitutional provisions and rights apply only to state action, or to acts by individuals abridging rights pursuant to specific state laws so that to a significant extent the state has become involved as a governmental entity. (16 Am.Jur.2d, Constitutional Law, § 491, pp. 854-857 (equal protection); *Merrill Lynch, Pierce, Fenner & Smith* v. *Ware* (1973) 414 U.S. 117, 123-125 [38 L.Ed.2d 348, 357-358, 94 S.Ct. 334] (commerce); *Hague* v. *C.I.O.* (1939) 307 U.S. 496, 511 [83 L.Ed. 1423, 1434, 59 S.Ct. 954] (privileges and immunities); *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 631 [22 L.Ed.2d 600, 613, 89 S.Ct. 1322] (travel).) ■ Here we have no allegation of a Hawaiian statute or any state activity under which the

---

[2]There is a certain analogy to rates charged by common carriers. The common law did not require such carriers, even as to public utilities, to treat all customers equally as to rates. The only requirement was not to charge any more to anyone than was "reasonable." (See *Cowden* v. *Pacific Coast S.S. Co.* (1892) 94 Cal. 470, 478-479 [29 P. 873].) Also, California has recognized the validity of rate differentials in water service to city residents as opposed to those nearby but who were nonresidents, as against a claim of unlawful "discrimination," holding only that the rate must be "reasonable." (*Durant* v. *City of Beverly Hills* (1940) 39 Cal.App.2d 133, 138-139 [102 P.2d 759].)

assertedly unlawful discrimination in hotel rates has taken place. It is not alleged that the State of Hawaii has in any way by express or implied statutory enactments caused, brought about, or taken any part in the rate discount policies or practices of the defendants.

Plaintiff points to California Civil Code sections 51 and 52 (the Unruh Civil Rights Act) as a form of recognition and extension of the common law rules applied to innkeepers. She asserts these statutes were violated by defendants.[3] It is true, as emphasized by plaintiff, that the California Supreme Court has construed Civil Code section 51 as prohibiting any *arbitrary* exclusion of *any* person from a business premise, even though the exclusion is based on something (such as long hair and strange garments) other than sex, race, color, religion, ancestry or national origin. (*In re Cox* (1970) 3 Cal.3d 205, 216-217 [90 Cal.Rptr. 24, 474 P.2d 992].) Plaintiff attempts to equate the Supreme Court decision in *Cox* with the case now before us. It cannot be done. Section 51 by its express language applies only within California. It cannot (with its companion penalty provisions in § 52) be extended into the Hawaiian jurisdiction. (*North Alaska Salmon Co.* v. *Pillsbury* (1916) 174 Cal. 1, 4 [162 P. 93].) ■ A state cannot regulate or proscribe activities conducted in another state or supervise the internal affairs of another state in any way, even though the welfare or health of its citizens may be affected when they travel to that state. (*Bigelow* v. *Virginia* (1975) 421 U.S. 809, 824-825 [44 L.Ed.2d 600, 613, 95 S.Ct. 2222].)

Even if the legal barriers to application of Civil Code sections 51 and 52 are put aside, statutory construction indicates they are not applicable here. The language in the *Cox* case, *supra,* does not make them applicable. ■ Plaintiff was not arbitrarily excluded from any business premise, nor was she arbitrarily discriminated against in any way. Plaintiff has alleged no tort, breach of contract or other actionable wrong. The trial court therefore did not err in sustaining the demurrers to the first cause of action.

---

[3] Civil Code section 51 reads in entirety as follows: "This section shall be known, and may be cited, as the Unruh Civil Rights Act.

"All persons within the jurisdiction of this State are free and equal, and no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

"This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, or national origin."

Civil Code section 52 contains the enforcement provisions for section 51 and need not be quoted here.

## The Second Cause of Action

The second cause of action purports to sound in conspiracy to commit the acts alleged in the first cause of action.

■ It is settled that there is no separate tort of civil conspiracy and therefore no civil action for conspiracy unless there is a wrongful act committed with damages flowing therefrom. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 31, 32, pp. 2330-2332; *Agnew* v. *Parks* (1959) 172 Cal.App.2d 756, 762 [343 P.2d 118]; *Kenworthy* v. *Brown* (1967) 248 Cal.App.2d 298, 301 [56 Cal.Rptr. 461].)

■ Nothing further need be said concerning the second cause of action, since we have dealt at length with the absence of an actionable wrong in the allegations of the first cause of action. The demurrer to the second cause of action was properly sustained.

## The Third Cause of Action

The third cause of action incorporates the first and second causes of action and also alleges on information and belief that defendants "violated certain laws, statutes, rules and regulations and the policies of the State of California and engaged in unfair and deceptive acts and practices and principals [*sic*] contrary to the public policies of the State of California." There are no other allegations in the third cause of action, and no reference to any specific laws, statutes, rules, regulations or policies.

On appeal, plaintiff relies upon Civil Code sections 51 and 52 which we have discussed above. We can perceive no more reason to apply these statutes to the allegations in the third cause of action than to the first cause of action. They are simply not pertinent.

Our research has disclosed no California statute, rule or policy which requires a hotel to charge a uniform rate to all its guests. The only statute remotely pertinent is of no aid to plaintiff. This is Civil Code section 1863 which requires posting of the range of rates and prohibits charging *more* than the posted rate. Insofar as policy or rules are concerned, an innkeeper has a duty to receive and accommodate all persons at a reasonable charge. (See 27 Cal.Jur.2d, Innkeepers, § 22, pp. 272-274.) This rule or policy is based upon the common law doctrine referred to above as well as Civil Code sections 51 and 52 and is reiterated in certain

court decisions. (*Piluso* v. *Spencer* (1918) 36 Cal.App. 416, 419 [172 P. 412]; *Perrine* v. *Paulos* (1950) 100 Cal.App.2d 655, 657 [224 P.2d 41].) In fact, an innkeeper who refuses accommodations without just cause (such as inability to pay, infectious disease, or the like) is not only civilly liable but is guilty of a misdemeanor. (Pen. Code, § 365.)

We need only add that the incorporation of her second cause of action into her third (thus bringing in the conspiracy allegations) is likewise useless for the same reason above indicated; there was no actionable conspiracy as to the first cause of action. This third cause of action before us does not allege a tort, breach of contract or other actionable wrong. Accordingly, there can be no civil conspiracy.

The trial court did not err in sustaining the demurrer to the third cause of action.

The judgment is affirmed.

Paras, J., concurred.

**FRIEDMAN, Acting P. J.**—I concur, but have a somewhat divergent view touching the second count of the complaint. That count alleges a conspiracy to charge a higher level of hotel rates to mainland tourists than to "Kamaainas." The negation of civil conspiracy as an independent tort does not quite obliterate the complaint's second count. Conspiracy is nothing but a pejorative term for a contract or agreement. The conspiracy charged against defendants in the second count of the complaint is nothing other than concerted price-rigging, a contract in restraint of competition.

Persons injured by such a contract might conceivably pursue a common law tort action on a theory of intentional deprivation of prospective economic advantage. (See *Buckaloo* v. *Johnson*, 14 Cal.3d 815, 822-823 [122 Cal.Rptr. 745, 537 P.2d 865]; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, §§ 392-393; Prosser on Torts (4th ed.) pp. 949-962.) In view of the heavy accretion of federal and state antitrust laws, the viability of a common law tort action is dubious. This particular tort lies within the flow of interstate commerce, within the ambit of federal antitrust legislation and within the domain of the federal courts.

This is the second appeal in this class action. The first (which turned on a forum non conveniens issue) was fully and fairly presented as a

battle over venue. (See *Archibald* v. *Cinerama Hotels,* 15 Cal.3d 853 [126 Cal.Rptr. 811, 544 P.2d 947].) The present appeal "on the merits" of the pleading is a scarcely concealed battle over venue, an attempt by the class plaintiffs to keep the lawsuit in the California state courts and an attempt by defendants to move it anywhere but California. Some enigmatic tactical purpose has motivated the defense to debate the pleading in terms of the common law "innkeeper" verbiage selected by plaintiffs rather than to unmask it as a charge of violating the federal antitrust laws by restraint of competition in interstate commerce.

Plaintiffs, at any rate, must lose this disguised battle over venue. A class of plaintiffs may maintain a civil damage action for violation of the federal antitrust statutes. (See 6 A.L.R. Fed., pp. 19-60.) As a civil damage action alleging restraint of competition in interstate commerce, the second count lies within the exclusive subject-matter jurisdiction of the federal courts. (*General Investment Co.* v. *Lake Shore & M. S. R. Co.,* 260 U.S. 261, 286-287 [67 L.Ed. 244, 259-260, 43 S.Ct. 106]; *Miller* v. *Granados,* 529 F.2d 393, 395.) It is outside the subject-matter jurisdiction of the California courts. Although defendants have not challenged state court jurisdiction, they may not consent to it.

A petition for a rehearing was denied September 28, 1977, and appellant's petition for a hearing by the Supreme Court was denied November 3, 1977.