TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------
:
OPINION : No. 87-207
:
of : <u>JULY 30, 1987</u>
:
JOHN K. VAN DE KAMP :
Attorney General :
:
CLAYTON P. ROCHE :
Deputy Attorney General :
----------------------------------------------------------------

THE CALIFORNIA AUCTIONEER COMMISSION has requested an opinion on the following questions:

1. Is a licensee of the California Auctioneer Commission subject to the provisions of the Auctioneer and Auction Licensing Act with regard to sales conducted by the licensee outside of California?

2. If a licensee of the California Auctioneer Commission holds a sale described in section 5730, subdivision (d) of the Auctioneer and Auction Licensing Act (automobile auction regulated by the Department of Motor Vehicles), is the sale exempt from all of the requirements of the act?

CONCLUSIONS

1. A licensee of the California Auctioneer Commission is not subject to the provisions of the Auctioneer and Auction Licensing Act with regard to sales conducted by the licensee outside of California.

2. If a licensee of the California Auctioneer Commission holds a sale described in section 5730, subdivision (d) of the Auctioneer and Auction Licensing Act (automobile auction regulated by the Department of Motor Vehicles), the sale is exempt from all the requirements of the act.

1

ANALYSIS

The Auctioneer and Auction Licensing Act, Business and Professions Code, sections 5700 through 5791.5 (hereinafter the "Auctioneer Act") was first enacted in 1982, (Stats. 1982, ch. 1499) and thereafter amended and greatly expanded in 1984 (Stats. 1984, ch. 1676).[1] The Auctioneer Act provides for the establishment of the California Auctioneer Commission as a public corporation whose powers are to be exercised by a seven member board of governors appointed by the Governor. (§§ 5710, 5714, 5715.) Accordingly, the "board shall govern, control, and administer the affairs of the commission" and the "commission is invested with all duties, powers, purposes, responsibilities, and jurisdiction regarding auctions and auctioneering in California." (§ 5714, emphasis added.)

The Auctioneer Act presents a comprehensive regulatory scheme. With respect to "administration", the act provides for the appointment of an executive officer to the commission, the appointment of two disciplinary review committees, and the adoption by the board of governors of rules and regulations concerning the scope of licensing and the standards for the approval of "schools of auctioneering." (§§ 5710-5724.) The act then provides for the licensing of auctioneers and persons who operate auction companies, and examinations therefor. (§§ 5730-5747.) The act also provides for the bonding of licensees, for the terms of bonds, and for actions upon such bonds under specified circumstance. (§§ 5760-5764). The act then provides in great detail the manner in which auctioneers and auction companies are to conduct their business and includes the specification of prohibited acts. In this respect, "administrative fines" are prescribed for violation of many of these particular provisions. (§§ 5770-5777.) A citation procedure is then provided for the hearing on and assessment of administrative fines. (§§ 5780-5784.) Thereafter, the act provides that the "board may deny, suspend, or revoke a license of any person for the violation of . . . [the act] or any regulation of the board", and sets forth procedures therefor. (§§ 5785-5789.) And finally, the act provides for the fixing of fees and the deposit of all fees and administrative fines in the Auctioneer Commission Fund. (§§ 5790-5791.5.)

It is in the context of this comprehensive licensing and regulatory scheme that we are presented two questions for resolution herein.

1. <u>Auctions Conducted By a Licensee Outside of California</u>

The first question presented concerns auctions conducted by a licensee of the California Auction Commission <u>outside of California</u>. As to such sales we are asked whether the licensee is subject to requirements of the <u>California</u> Auctioneer Act. Subdivision (m) of section 5775 is cited by the requester as an example. It provides:

"Every person licensed under this chapter shall do all of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1]Section references will be to the Business and Professions Code unless otherwise indicated.

2

"(m) Within 30 working days after a sale transaction of goods, pay or cause to be paid, all moneys and proceeds due to the owner or the consignor of all goods that were the subject of an auction engaged in or conducted by the licensee, unless delay is compelled by legal proceedings or the inability of the licensee, through no fault of his or her own, to transfer title to the goods or to comply with any provision of this chapter, the Commercial Code, the Code of Civil Procedure, or any other applicable provision of law. A first violation of this subdivision is subject to a fine of one thousand dollars ($l,000); a second violation is subject to a fine of one thousand five hundred dollars ($1,500); and a third or subsequent violation is subject to a fine of two thousand dollars ($2,000)."

This question is asked so that the Auctioneer Commission may know whether it should consider disciplinary action against a licensee when it receives complaints of alleged violations of this type of provision with respect to out-of-state auctions conducted by its licensees.

An examination of the Auctioneer Act discloses that section 5775 is one of three sections of the act wherein it is specified how licensees are to conduct their auctioneering businesses generally, and the auctions they conduct specifically. The other sections are section 5774 and 5776. These sections essentially set forth the requirements and prohibitions of the act in this respect. Also, the so-called prohibitions in many cases may be said to be requirements of the act as to how an auction is to be conducted. For example, section 5776, subdivision (k) "prohibits" the sale at auction of goods before a written contract is entered into with the consignor containing certain specified statutory requirements as to its terms. Conversely, this provision would require such a contract.

Returning to the primary example specified in the request, that is, subdivision (m) of section 5775, we note that it is one of a sequence of subdivisions which, if violated, will trigger a right to make a claim against the licensee's bond. (See §5764, subdivision (a): failure "to comply with subdivision (m), (o), (p) or (q) of Section 5775.") Subdivisions (o), (p) and (q) require of the auctioneer sequentially (l) disclosure to the audience of any liens on the goods to be auctioned, (2) return within 2 days of deposits of each potential buyer who made no purchases, and (3) return within 30 days of any excess deposits of actual purchasers at the auction.

With this brief explanation of the requirements of the Auctioneer Act, we now proceed to the statutory and decisional law we believe to be applicable to resolve the question as to the possible power of the California Auctioneer Commission to discipline its licensee for out-of-state activities.

Section 110 of the Government Code provides that "[t]he sovereignty and jurisdiction of this State extends to all places within its boundaries. . . ." (Emphasis added.) Accordingly, "[a] state cannot regulate or proscribe activities conducted in another state or supervise the internal affairs of another state in any way, even though the welfare of its citizens may be affected when they travel to that state. . . ." (Archibald v. Cinerama Hawaiian Hotels, Inc. (1977) 73 Cal.App.3d 152, 159.)

This rule, however, does not prevent extraterritorial acts of its citizens or licensees from having effect in California in proper cases. Thus, the California Supreme Court stated in the

3

early case of <u>North Alaska Salmon Co.</u> v. <u>Pillsbury</u> (1916) 174 Cal. 1, 4:

> ". . . Ordinarily, the statutes of a state have no force beyond its boundaries. (Sutherland on Statutory Construction, 2d.ed., sec. 123; Story on Conflict of Laws, 8th ed., secs. 7, 22.)  Except within the domain committed to the control of the federal government, the states of the Union are 'severally sovereign, independent and foreign to each other in regard to their internal and domestic affairs.' (<u>Stevens</u> v. <u>Brown</u>, 20 W.Va. 450, 459.)  Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect.  The intention to make the act operative, with respect to occurrences outside the state, will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.' . . ."

As to licensees of California, typical examples of the proper application of state law to the extraterritorial acts of its licensees may be found in cases decided under the State Bar Act and provisions of the California Vehicle Code.

Thus, as to the State Bar Act and attorneys licensed to practice law in California, our Supreme Court held in the relatively early case of <u>Barnes</u> v. <u>District Court of Appeal</u> (1918) 178 Cal. 500 that the State Bar Act, which permitted the discipline of an attorney for conviction of a felony or a misdemeanor involving moral turpitude, applied to <u>out-of-state convictions</u> as well as to California convictions.  The Court stated:

> ". . . The reasons which induced the legislature to prescribe this as a ground for disbarment are as potent when applied to a conviction in a court of another state, or in a court of the United States, as when applied to a conviction in the courts of this state.  It was not because of the particular court which adjudges the attorney guilty, or the place where it sits, that the legislature saw fit to make that a cause for disbarment, but because of the bad moral character of such attorney, which the legislature deemed was conclusively proved by such record of conviction. . . ." (<u>Id.</u> at p. 505.)

(See also <u>Otsuka</u> v. <u>Hite</u> (1966) 64 Cal.2d 596, 611-612, fn. 14, re foreign conviction as a disqualification for voting; <u>In re Richardson</u> (1940) 15 Cal.2d 536, attorney convicted in federal court;  <u>People</u> v. <u>Davis</u> (1985) 166 Cal.App.3d 760, state escape provision applies to escape from custody when held for commission of federal felony as well as a state felony.)  An example of statutes specifically making out-of-state conduct a ground for disciplinary action may also be found in the Vehicle Code with respect to motor vehicle operator licenses.  Thus, section 13363 of the Vehicle Code permits the Department of Motor Vehicles to suspend or revoke a driver's license for an out-of-state conviction "of an offense therein which, if committed in this State, would be grounds for the suspension or revocation of the privilege to operate a motor vehicle."  And section 13352, subdivision (d) specifically, gives out-of-state convictions for drunk driving the same effect as in-state convictions for purposes of the suspension or revocation of the privilege to operate a motor vehicle. (See <u>Cook</u> v. <u>Department of Motor Vehicles</u> (1973) 33 Cal.App.3d 265; see also <u>Pollack</u>

4

v. <u>Department of Motor Vehicles</u> (1985) 38 Cal.3d 367, 377.)

Accordingly, it is seen that California, through the Auctioneer Commission, may not <u>regulate</u> auction sales extraterritorially. However, this does not mean that California may not give effect <u>in California</u> to the extraterritorial conduct of its business licensees such as licensed auctioneers where that conduct relates to the fitness of the individual to hold a license. Whether effect is to be given to extraterritorial conduct is essentially a question of determining legislative intent.

In making this determination, the basic rule is that California law is not to have "extraterritorial" effect unless specifically provided by the Legislature or "such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'" (<u>North Alaska Salmon Co.</u> v. <u>Pillsbury,</u> <u>supra</u>, 174 Cal. 1, 4.)

Initially, we note that there is nothing in the Auctioneer Act which specifically provides that any of its requirements or prohibitions are applicable to out-of-state auctions conducted by licensees. Furthermore, as we noted at the outset, section 5714 of the act specifically states that the jurisdiction of the California Auctioneer Commission extends to "auctions and auctioneering <u>in California</u>." (Emphasis added.) Accordingly, on the face of the act itself, it appears that requirements of the act, such as subdivision (m), section 5775 were not intended to and would not apply to out-of-state sales even if conducted by a California licensee. (<u>Cf</u>. 67 Ops.Cal.Atty.Gen. 7 (1984): State Athletic Commission has no authority to issue boxing referee's license which would be valid only extraterritorially since it has no authority to regulate boxing matches outside of California.)

Additionally, we believe that a provision such as subdivision (m) of section 5775, requiring payment of sales proceeds to consignors within 30 days is a <u>regulatory</u> provision and not one that goes to the fundamental personal fitness of the licensee to conduct auctions, such as the conviction of a felony. Certainly, if the auctioneer paid over such proceeds on the thirty-first day, he would be in violation of the regulatory scheme, but could not necessarily be said to be lacking in such moral character as to be disciplined or be forever barred from conducting auctions. The same could be said of the other provisions involving time constraints such as subdivisions (o), (p) and (q) of section 5775, discussed ante.

Furthermore, to impose this type of requirement extraterritorially could conceivably conflict with the other state's regulatory scheme with respect to auctions. In its provisions the Auctioneer Act itself recognizes the possibility that other states may also regulate auctions when it permits waiver of licensure examination for certain out-of-state licensees. (§5734.) Such potential conflict is to be avoided.

And finally, insofar as one might urge that the violation of time provisions such as paying over or returning funds would be some evidence of bad character, going to the personal qualifications of the licensee, we note that the Auctioneer Act itself has a separate provision regarding personal qualifications. Thus, subdivision (b) of section 5777 of the act makes it a ground for denial, suspension or revocation of a license to be convicted

". . . of forgery, embezzlement, obtaining money under false pretenses, extortion, conspiracy to defraud, receiving stolen property, issuance of insufficient fund checks, or any similar offense substantially related to the auctioneering profession."

Accordingly, this provision appears to be the provision the Legislature has prescribed for determining whether an act, whether committed within the state, or extraterritorially, should be grounds for disciplinary action. We believe this to be so because cases such as Barnes v. District Court of Appeal, supra, 178 Cal. 500, involving the State Bar Act and extraterritorial conviction of crimes, were part of the decisional law of California when the Auctioneer Act was enacted. However, except for subdivision (b) of section 5777(b), we found nothing in the provisions of the act, its purpose, subject matter or history from which to draw the conclusion that its provisions were to apply to the extraterritorial actions of California licensees, the test set forth in North Alaska Salmon Co. v. Pillsbury, supra, 174 Cal. 1.

Section 5772 also indicates that the provisions of the Auctioneers Act which regulate auctions and auctioneering were not intended to apply to conduct which occurs outside of California. Subdivision (a) of that section provides in part:

"(a) The superior court for the county in which any person has engaged or is about to engage in any act that constitutes a violation of this chapter may, upon a petition filed by the board or any other person, issue an injunction or other appropriate order restraining violative conduct. . . ." (Cf. subd. (b) using similar language.)

Such language contemplates that the violations in question occur in some county in California.

We conclude that a licensee of the California Auctioneer Commission is not subject to the provisions of the Auctioneer Act with regard to sales conducted by the licensee outside of California.

2. The Scope of Section 5730, subdivision (d), As To Automobile Auctions

The second question presented involves the scope of subdivision (d) of section 5730 of the Auctioneer Act. The question is whether, if a licensee of the Commission holds a sale described in section 5730, subdivision (d), the sale is exempt from all the requirements of the Auctioneer Act. Section 5730, subdivision (d) provides:[2]

_____

[2]Section 5730 provides in full:

"No individual may act as auctioneer and no person may operate an auction company unless that individual or person holds an unexpired and otherwise valid license issued pursuant to this chapter. However, the requirements of this chapter do not apply to any of the following:

6

"No individual may act as an auctioneer and no person may operate an auction company unless that individual or person holds an unexpired and otherwise valid license issued pursuant to this chapter.  However, the requirements of this chapter do not apply to any of the following:

". . . . . . . . . . . . . . . . . . . . . . . .

(d) An automobile auction regulated by the Department of Motor Vehicles. However, an individual acting as an auctioneer at any such auto auction shall hold a license as required by this chapter unless the auctioneer is licensed as a salesman by the Department of Motor Vehicles and is employed by the auto auction." (Emphasis added.)

---

"(a) An auction of goods conducted by an individual who personally owns those goods and who did not acquire the goods for resale.

"(b) An auction conducted by, on behalf of, or under the direction of, any public authority, political candidate or party, church, or charitable organization. However, if the individual conducting the sale receives compensation or, by advertising or otherwise, holds himself or herself out as being available to engage in the sale of goods at auction for compensation, that individual shall be required to hold a license pursuant to this chapter.

"(c) A sale of real estate.

"(d) An automobile auction regulated by the Department of Motor Vehicles. However, an individual acting as an auctioneer at any such auto auction shall hold a license as required by this chapter unless the auctioneer is licensed as a salesman by the Department of Motor Vehicles and is employed by the auto auction.

"(e) An auction of livestock in any place designated by the Secretary of the United States Department of Agriculture as a stockyard pursuant to Section 202 of Chapter 9 of Title 7 of the United States Code.  The exemption provided by this subdivision shall extend to individuals acting as auctioneers at any such livestock auction only if the sale is conducted under the jurisdiction of the United States Department of Agriculture.

"(f) An auction conducted by an owner, as defined in Section 21701, if the goods are being auctioned to enforce a lien, or a judgment entered on a lien in favor of the owner, on goods stored at a self-service storage facility and the lien is obtained pursuant to Chapter 10 (commencing with Section 21700) of Division 8."

Vehicle Code regulations concerning automobile auctions are contained in section 24007.5 of that code.[3]  Comprehensive regulations with respect to licensure of automobile salespersons are found in section 11800 et seq. of the Vehicle Code.  These, like other occupational licensing provisions, contain detailed provisions as to proscribed activities and as to the denial of, the suspension of, or the revocation of licenses.

Statutes are to be applied according to their plain meaning unless to do so would produce absurd results or would defeat the manifest intention of the Legislature.  (Brown v. Superior Court (1984) 37 Cal.3d 477, 485; California Highway Patrol v. Worker's Compensation Appeals Board (1986) 178 Cal.App.3d 1016, 1024.)  An examination of the first paragraph of section 5730 discloses that the section initially imposes a licensure requirement for conducting auctions.  However, the section then states that the following exemptions, including subdivision (d) as to automobile auctions, are from "the requirements of this chapter," that is, from the entire Auctioneers

---

[3]Section 24007.5 provides:

"(a) Except as otherwise provided in subdivisions (c), (d), and (e), no auctioneer or public agency shall sell, at public auction, any vehicle specified in subdivision (a) of Section 24007, which is not in compliance with the provisions of this code, unless the vehicle is sold to a dealer or for the purpose of being wrecked or dismantled or is sold exclusively for off-highway use.

"(b) Except as otherwise provided in subdivision (e), any auctioneer or public agency which sells, at public auction, any vehicle specified in subdivision (b) of Section 24007, shall provide each bidder with a notice in writing that a certificate of compliance is required to be obtained, certifying that the vehicle complies with the provisions of Part 5 (commencing with Section 43000) of Division 26 of the Health and Safety Code, before such vehicle may be registered in this state, unless the vehicle is sold to a dealer or for the purpose of being wrecked or dismantled or is sold exclusively for off-highway use.

"(c) If, in the opinion of an auctioneer or public agency, the cost of repairs to a vehicle exceeds the value of the vehicle to the auctioneer or agency, the auctioneer or agency shall, as transferee or owner, surrender the certificates of registration and ownership and license plates last issued for such vehicle to the Department of Motor Vehicles as provided under Section 11521 of this code.

"(d) The auctioneer or agency having complied with the provisions of subdivision (c) of this section shall, upon sale of such vehicle, give to the purchaser a bill of sale which shall include, in addition to any other required information, the last issued license plate number.

"(e) The provisions of subdivisions (a) and (b) do not apply to any judicial sale conducted pursuant to a writ of execution or order of court."

Act.  Accordingly, the plain meaning of section 5730 is that under the circumstances set forth in subdivisions (a) through (f), none of the requirements of the Auctioneer Act shall apply.  These circumstances may require, however, that in some instances the auctioneer be licensed by the Auctioneer Commission or another agency.

As to a possible need to depart from the plain meaning of section 5730, subdivision (d) (our concern herein), we find nothing in the Auctioneer Act which would manifest an intention on the part of the Legislature that the exemption should be any narrower than stated.  Nor would it produce absurd results to apply subdivision (d) of section 5730 as written.  This subdivision appears to have been placed in the act to avoid dual regulation, which would be both unnecessary and could lead to a possible conflict in jurisdiction between two state agencies.[4]

Furthermore, the plain meaning construction is the one which has been followed by the board of governors of the Auctioneer Commission. The board has construed section 5730 as removing the sale from the requirements of the act despite the licensure of the auctioneer.  The contemporaneous administrative construction of a statute by the agency charged with its enforcement is entitled to great weight and, if not clearly erroneous, will be followed by the courts. (City of Los Angeles v. Public Utilities Com. (1975) 15 Cal.3d 680, 696; Wilkinson v. Workers' Compensation Appeals Bd. (1977) 19 Cal.3d 491, 501.)

Accordingly, for the foregoing reasons, we conclude that if a licensee of the California Auctioneer Commission holds a sale described in section 5730, subdivision (d) of the Auctioneer Act (automobile auction regulated by the Department of Motor Vehicles), the sale is exempt from all the requirements of the Act.

\* \* \* \*

---

[4]Similar reasons could be found for each exemption.

9