**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 24 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBIN ANDERSON, | No. 15-55556 |
| Plaintiff-Appellant, | D.C. No. 5:14-cv-00368-DSF-MAN |
| v. | |
| CRST INTERNATIONAL, INC., an Iowa corporation; CRST VAN EXPEDITED, INC., an Iowa Corporation; ERIC VEGTEL, an individual, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted January 11, 2017
Pasadena, California

Before: TALLMAN and FRIEDLAND, Circuit Judges, and FABER,[**] Senior
District Judge.

Appellant Robin Anderson brought claims against Appellees CRST

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable David A. Faber, Senior United States District Judge
for the Southern District of West Virginia, sitting by designation.

International, Inc., CRST Van Expedited, Inc. (collectively, "CRST"), and Eric Vegtel alleging sex discrimination under California's Fair Housing and Employment Act ("FEHA"), Cal. Gov. Code § 12940 *et seq.*, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. She also brought a claim against CRST alleging retaliation under Title VII. 42 U.S.C. § 2000e. The district court granted summary judgment to Appellees on all claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

We review a district court decision granting summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the non-movant, there are any genuine issues of material fact. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

We first address the FEHA claims. The California Supreme Court has stated that "[o]rdinarily the statutes of a state have no force beyond its boundaries . . . . Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect." *N. Alaska Salmon Co. v. Pillsbury*, 162 P. 93, 93 (Cal. 1916). This presumption may be overcome if extraterritorial intent "is clearly expressed or reasonably . . . inferred from the language of the act or from its purpose, subject matter or history." *Id*. (citations and internal quotation marks

2

omitted).

The text of the FEHA does not provide for its extraterritorial application, nor does its "purpose, subject matter or history" suggest that the legislature intended it to apply to extraterritorial transactions. *Id*. Thus, Anderson's claims under the FEHA fail because they are based on conduct that occurred outside the state. We therefore affirm the district court's grant of summary judgment to both Appellees on the FEHA claims.

Next, we must decide the Title VII claims. No Title VII cause of action exists against Vegtel because Anderson has sued him in his individual capacity. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). Accordingly, we also affirm this aspect of the district court's decision.

However, we reverse the district court's grant of summary judgment to CRST on Anderson's Title VII claim alleging hostile work environment. First, Anderson presents evidence from which a jury could determine both that Anderson subjectively perceived her work environment to be hostile and that a reasonable woman in Anderson's position would have perceived the environment to be hostile. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991). Indeed, such a perception could have been exacerbated by the fact that truck co-drivers spend significant amounts of time in close proximity with one another, and by the fact that this conduct occurred in a

3

compressed timeframe, over the course of three weeks. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998) (observing that determining whether workplace behavior constitutes harassment "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target . . . [and] often depends on a constellation of surrounding circumstances, expectations, and relationships").

Second, Anderson presents sufficient evidence to create a material dispute as to whether CRST provided an effective remedy. An employer can escape liability for hostile work environment if it takes effective action once it "knows or should know of harassment." *Fuller v. City of Oakland*, 47 F.3d 1522, 1528 (9th Cir. 1995); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000) (explaining that the employer's response is critical to a hostile-work-environment inquiry under Title VII, "[w]hich is why [the harasser's] conduct, while relevant, is not the primary focus of our inquiry").[1] The effectiveness of such action is

---

[1] Our colleague quotes *Brooks* out of context. *Brooks* holds that "an isolated incident of harassment by a co-worker will rarely . . . give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship" on the theory that "only the employer can change the terms and conditions of employment." 229 F.3d at 924. "[I]f the employer takes appropriate corrective action, it will not have ratified the conduct. In such circumstances, it becomes difficult to say that a reasonable victim would feel that the terms and conditions of her employment have changed as a result of the misconduct." *Id.* Conversely, an employer may ratify harassing conduct by failing to take appropriate corrective action, in which case a victim may reasonably feel that the terms of her employment have changed.

4

"measured by the twin purposes of ending the current harassment and deterring future harassment—by the same offender or others." *Fuller*, 47 F.3d at 1528. Here, the harassment stopped because Anderson and Vegtel were separated. However, Anderson presents evidence that CRST never actually investigated her complaint and never informed Vegtel of the fact that he was prohibited from driving with female truck drivers in the future. Moreover, Anderson alleges that CRST failed to reassign her to a new truck or new routes after she and Vegtel were separated. We have held that an employer's remedy is not effective even though it stops harassment if the remedy targets the victim and puts her in a worse position. *See e.g., Ellison*, 924 F.2d at 883 (finding ineffective remedy where employer transferred victim to less desirable location); *Fuller*, 47 F.3d at 1522 (finding ineffective remedy where employer offered to transfer victim to less desirable location). And although CRST insists that it attempted to reassign Anderson by sending her an email with a list of female drivers, the email provided no explanation of what the list was or how it should be used. On these facts, a jury could conclude that CRST's remedy put Anderson in a worse position and was thus not effective.[2]

---

[2] Contrary to our colleague's characterization, we do not suggest that CRST was expected to anticipate Vegtel's harassing behavior or that it erred by failing to provide separate hotel rooms. Instead, our holding is based on CRST's response to Vegtel's conduct after the fact. We conclude only that Anderson has presented

5

Because a reasonable jury could determine that Vegtel's conduct was sufficiently severe and pervasive to create a hostile work environment, and that CRST failed to provide an effective remedy, we reverse the district court's grant of summary judgment to CRST on the hostile work environment claim.

Finally, we reverse the district court's grant of summary judgment to CRST on Anderson's Title VII claim alleging retaliation. Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Anderson has made out a *prima facie* case of retaliation. Accordingly, the burden shifts to CRST to state a "legitimate, nondiscriminatory reason" for firing her. *Id.* at 802. Although CRST argues that Anderson failed to report to work, Anderson insists that after filing her complaint she never received any work assignments, and there is no evidence to suggest that she was obligated to find her own route assignments from CRST. If Anderson did not abandon her job, then CRST has failed to proffer a non-retaliatory reason for her termination. Because a reasonable jury could conclude that CRST actually fired Anderson in retaliation for submitting a

---

sufficient evidence to create a material dispute as to whether CRST's remedy was "effective" or, instead, put Anderson in a worse position because CRST removed Anderson from her existing route and then failed to offer her a reassignment or return her calls to human resources. Moreover, our colleague's statement that CRST "attempted to give Anderson new work assignments" is a conclusion that can only be reached by viewing the evidence in the light most favorable to CRST instead of, as our law requires, in the light most favorable to Anderson. Dissent 3.

6

complaint against Vegtel, we reverse the district court's grant of summary judgment to CRST on the retaliation claim.

For the above reasons, we reverse the district court's grant of summary judgment as to CRST's Title VII liability on the hostile work environment and retaliation claims, but affirm the judgment as to the state-law claims against both Appellees and affirm the judgment as to the Title VII claims against Vegtel. The case is remanded for further proceedings not inconsistent with our decision.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

The parties shall bear their own costs.



*Anderson v. CRST Int'l, Inc.*, No. 15-55556

FABER, Senior District Judge, dissenting in part and concurring in part:

I agree with the majority that Appellant's state law claims under California's Fair Housing and Employment Act (FEHA), Cal. Gov. Code § 12940 *et seq.*, are barred. I also agree that no Title VII cause of action exists against Appellee Vegtel since he has been sued in his individual capacity. I respectfully part company with my colleagues on the issue of whether the district court properly granted summary judgment to Appellee CRST on Appellant's Title VII claim that alleges (1) hostile work environment and (2) retaliation. In my view, the opinion of the majority on these points is not supported by evidence on the record and fails to follow the teaching of the United States Supreme Court in relevant cases.

## I.    HOSTILE WORK ENVIRONMENT

I do not believe that Anderson has offered sufficient evidence from which a reasonable jury could conclude that she was in a hostile work environment. The United States Supreme Court has observed that "[i]f the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State University*, 133 S. Ct. 2434, 2439 (2013). Under such circumstances, "'employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known.'" *McGinest v.*

*GTE Service Corp.*, 360 F.3d 1103, 1119—20 (9th Cir. 2004) (quoting *Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir. 1991)). As common sense tells us, an employer cannot (and should not) be held liable for conduct of which it is unaware. "The employer's liability, if any, runs only from the time it knew or should have known about the conduct and failed to stop it." *Swenson v. Potter*, 271 F.3d 1184, 1192 (2001).

As this Court held in *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000), "an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship." As the district court in our case pointed out, here there were two primary incidents of harassment over a three-week period, incidents the employer knew nothing about until after the fact. The incidents could hardly become "a permanent feature of the employment relationship" without the employer's imprimatur. *Id.* The employer never gave its approval to the harassment Anderson alleges here. Before, during, and after these incidents, CRST has endeavored to eradicate sexual harassment from its company culture. For the same reasons, it is also no answer to suggest that the frequency of incidents notwithstanding, the severity, the physically threatening or humiliating nature of it, and the level of interference with the alleged victim's work were so high that a reasonable jury could find the conduct actionable under Title VII. *See Harris v.*

*Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). A reasonable jury could not find that *CRST's* conduct or inaction was frequent, severe, or physically threatening or humiliating or that it interfered sufficiently with Anderson's terms of employment.

CRST, when it did learn of Vegtel's alleged misconduct, took immediate steps to stop it. It prohibited Vegtel from working with female co-drivers, and it attempted to give Anderson new work assignments that would not require her to team up with male co-drivers. Furthermore, CRST had a policy of educating its employees on the subject of sexual harassment, and a policy and practice designed to prevent the very conduct of which Vegtel was accused. Vegtel may have ignored what CRST had tried to teach him. The fact that CRST might have done more does not overcome the fact that it did enough to escape liability under Title VII. When "assum[ing] the perspective of [a] reasonable victim," no reasonable juror would find that the actions CRST took were insufficient to prevent a recurrence or inadequate to remedy what allegedly had happened. *Brooks*, 229 F.3d at 924 (citing *Ellison*, 924 F.2d at 879).

Accordingly, I find no hostile work environment for which CRST can be held responsible. All CRST did that could conceivably have contributed to a hostile work environment was to require male-female driving teams to share hotel rooms. To conclude that this practice, while ill-advised, alone created a hostile work environment is to assume that every woman is vulnerable and every man is a

cad. *See*, *e.g.*, *United States v. Virginia*, 518 U.S. 515, 541 (1996) (disfavoring gender classifications based on "generalizations or tendencies") (citations and internal quotation marks omitted); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270—71 (1993) (providing an example of the fact that "women as a class" are not a monolith susceptible of being typecast).

## II.     RETALIATION

I likewise find no evidence in the record to support the conclusion that Anderson was fired because she filed a complaint.  To so conclude is to base the decision on speculation and little else.  The fact that Anderson was discharged after she filed a complaint is not evidence that she was fired because of the complaint.  On the other hand, there is evidence compelling the conclusion that she was fired because she abandoned the job.

Even if we assume that retaliation was a motivating factor for CRST when it discharged Anderson, an assumption not supported by any evidence, her claim still fails under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The United States Supreme Court recently held that, under Title VII, it is inadequate for a plaintiff to show that discrimination on a proscribed basis was one motivating factor for the adverse action.  *See Univ. of Texas S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013).  Retaliation must be the "but for" cause of the employer's adverse decision.  *Id*. at 2527.

If a desire to retaliate exists only among other possible reasons, the plaintiff has not met her burden. There must be evidence that retaliation was the actual reason for the adverse employment action. Anderson has not come close to meeting this burden. On the contrary, CRST had a good reason to fire her—she initially did nothing to accept her reassignment to team only with other female drivers; and she went missing in action and could not be located despite CRST's efforts to find her. In effect, Anderson abandoned her post and was let go as a result.

*　　*　　*

I would affirm the district court's decision in all respects.