Filed 3/30/22  Jensen v. Jensen CA2/1

# TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| KRISTEN KERR JENSEN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEVEN E. JENSEN,<br><br>    Defendant and Appellant. | B307354<br><br>(Los Angeles County<br>Super. Ct. No. BD553016) |

APPEAL from an order of the Superior Court of Los Angeles County, Lynn H. Scaduto, Judge.  Affirmed.

Klapach & Klapach and Joseph S. Klapach for Defendant and Appellant Steven E. Jensen.

Crowell & Moring, Emily T. Kuwahara, Andrew Holmer, Ian Logan; Family Violence Appellate Project, Arati Vasan, Jennafer Dorfman Wagner, Erin C. Smith and Jodi Lewis for Plaintiff and Respondent Kristen Kerr Jensen.

Latham & Watkins, Marguerite M. Sullivan, Allison O'Hara, Erin Marie Hallagan and Benjamin Philip Stollman for DV LEAP as Amicus Curiae on behalf of Plaintiff and Respondent Kristen Kerr Jensen.

Community Legal Aid SoCal and Sarah Reisman for Community Legal Aid SoCal as Amicus Curiae on behalf of Plaintiff and Respondent Kristen Kerr Jensen.

California Women's Law Center and Chelsea Mutual for California Women's Law Center as Amicus Curiae on behalf of Plaintiff and Respondent Kristen Kerr Jensen.

---

This is an appeal from an order granting a permanent domestic violence restraining order against a divorced husband, Steven E. Jensen. Steven[1] appeals, contending that (1) the California court no longer has jurisdiction over this matter because Steven and Kristen, his former wife, now live in North Carolina, (2) the court erred in denying his forum non conveniens motion to dismiss, (3) in any event the trial court applied the wrong law, and (4) the order is not supported by substantial evidence. We reject Steven's claims of error and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Steven and Kristen were married in 2005, and thereafter had two children (one born in 2008, the other in 2010). In 2011, in California, Kristen filed a petition to dissolve the marriage. The court entered a stipulated temporary custody order in June 2015, tried the remaining issues in July 2015, and entered a judgment in September 2015.

In August 2015, Steven sued Kristen and others, alleging that Kristen had hacked into Steven's email account and, through

---

[1] For the sake of clarity, we use the parties' first names. No disrespect is intended.

2

her attorney, used information thereby obtained in the dissolution action. Kristen filed a cross-complaint, alleging breach of fiduciary duty and invasion of privacy, among other claims.[2]

In September 2016, Steven pleaded guilty to three counts of contempt for violating the court's child custody and visitation order on three separate occasions. The court sentenced him to two days in jail, suspended execution of sentence, and placed him on probation for one year.

In 2017, Kristen filed a request for a domestic violence restraining order against Steven, alleging that Steven had engaged in a pattern of harassment. Following an evidentiary hearing, the court issued a three-year restraining order protecting Kristen (the DVRO). The court found Kristen had met her burden of establishing abuse in the form of harassment and disturbing the peace, including the malicious dissemination of nude photos of Kristen that Steven obtained from Kirsten's old phone. The court further stated it had considered Steven's destruction of personal property (breaking a picture), and "a plethora of harassing, sarcastic and insulting communications" from Steven to Kristen, her attorneys, and one of Kristen's friends. The court did not make any finding that Steven had engaged in any violence or threats of violence.

The DVRO prohibits Steven from, inter alia, harassing, threatening, or disturbing the peace of Kristen. It prohibits Steven from coming within 100 yards of Kristen, with exceptions for parent/teacher conferences, back to school nights, "and any other event that parents are invited to attend, in which case [Steven]

---

[2] As of June 2020, this civil lawsuit between the parties was still pending. The record does not indicate the ultimate fate or more current status of the lawsuit after that point.

must stay at least 20 yards from [Kristen] where possible; if the room/space is not large enough, then [Steven] must stay 5 yards away from [Kristen]." The DVRO also contains an exception for brief and peaceful contact between Steven and Kristen as required for court-ordered visitation. A custody and visitation order was attached to the DVRO, and among other things, it prohibited Steven from attending the children's extracurricular activities or field trips during Kristen's custodial time without her express written permission.[3] Following a successful petition for a writ of mandate Steven filed with this court, the family court modified the DVRO to permit him to attend Kristen's deposition in his civil suit against her.

In February 2018, Steven violated the child custody and visitation order attached to the DVRO by attending a school field trip during Kristen's custodial time without obtaining her written consent. The court found him in contempt and sentenced him to five days in jail and 120 hours of community service.

In March 2019, the parties agreed to move to North Carolina and the court entered a stipulated modified judgment granting Kristen sole legal custody of the children and visitation rights for Steven. Steven and Kristen agreed they would "register [the judgment implementing] this Settlement Agreement . . . with the family law court[ ] in Mecklenburg County, North Carolina."

In April 2019, while the parties presumably were still living in California, Kristen requested the court issue an order to show cause why Steven should not be held in contempt for alleged

---

[3] Neither party argues that this order altered the basic visitation or custody terms arrangement between the parties. To the contrary, the DVRO notes that it does not modify the custody and visitation terms set forth in the attached order.

4

violations of the DVRO and/or the child custody and visitation terms of the stipulated judgment. The court dismissed the contempt charges when Kristen and her lawyer failed to appear for the hearing, then reinstated them at Kristen's request. Steven filed a petition for a writ of mandate and we issued an alternative writ, in response to which the family court vacated its rescheduling order, thus putting an end to this round of contempt proceedings.

On May 15, 2020, by which time the parties had settled in North Carolina, Kristen filed a request to "permanently" renew the DVRO both in the Los Angeles County Superior Court and a North Carolina court. On May 29, 2020, the North Carolina court denied Kristen's request, apparently for lack of jurisdiction.[4] Kristen alleged that Steven "continues to taunt [her,] flip [her] off at the site of custodial exchanges" and "writ[e] excessive, unfriendly and caustic communications." She more specifically alleged various incidents, including ones in which Steven had (without her permission) signed up their son for flag football, then attended the games and volunteered too frequently at their children's school during her custodial time. Steven filed a response in the Los Angeles County Superior Court, supported by a declaration

---

[4] Kristen contends the North Carolina court denied the request for lack of jurisdiction, something Steven, in a declaration he filed below, acknowledges he personally witnessed. Nevertheless, Steven's opening brief suggests the North Carolina court denied Kirsten's motion because she failed to present sufficient evidence to support the motion. The record does not contain the North Carolina court's order, and a statement in a brief is insufficient to meet Steven's burden to furnish us with a record supporting this claim. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

disputing Kristen's allegation.  He also filed a motion to dismiss on forum non conveniens grounds.

The hearing on Kristen's DVRO renewal request was presided over by the same Los Angeles County Superior Court judge that had held Steven in contempt in 2018 and considered Kristen's unsuccessful 2019 contempt request.[5]  The court denied Steven's oral request for a continuance, and the hearing proceeded with Kristen as the only witness.  The court denied Steven's motion to dismiss, then permanently renewed the restraining order.

In so doing, the court considered the evidence before and findings of "the judge then assigned to the case . . . when he granted petitioner's original application" for the DVRO.  The court noted that, under the applicable standard, such findings and evidence "may alone provide the necessary proof to warrant renewal."  The court then considered events and circumstances since the DVRO was issued, and concluded such evidence, when considered with the evidence underlying the original DVRO, "demonstrates that nothing has changed since the court issued the [DVRO] on May 16, 2017. [Steven] continues to show that he is driven to humiliate, punish and taunt [Kristen]. This court has observed [Steven] to be creative and calculating in his efforts to rattle [Kristen].  The court found the incidents petitioner credibly described in her May 15, 2020, declaration and in her [in court] testimony . . . to be only the tip of the iceberg in terms of [Steven's] continued harassment and disturbing of [Kristen's] peace."  The court then provided "[o]ther illustrative examples," including:  (1) Steven's "repeated requests in 2017 and 2018 to modify the term of the restraining order," in

---

[5] Other judicial officers heard the initial DVRO request and the various dissolution proceedings.

support of which Steven made representations "the court found . . . to be false and pretextual," (2) Steven's efforts in December 2017 to have Kristen held in contempt for interfering with his custodial time when she took the children to San Diego following fire-related school closures, even though "[i]t was undisputed that [Kristen] had offered [Steven] make up time," (3) Steven's efforts to oppose Kristen's request to spend Christmas with the children, at the hearing regarding which Steven offered a "fabricat[ed]" "description . . . of the Christmas celebrations he previously organized for the children," (4) Steven's contempt conviction in 2018, in connection with which Steven "had taken affirmative steps intended to create 'plausible deniability' for his planned violation," and (5) that during a 2019 hearing, Steven "flipped off" Kristen.

"In light of . . . the evidence and findings upon which the [DVRO] was based[,] . . . the evidence before the court of [Steven's] violation of the restraining order in the form of, inter alia, a contempt conviction, and . . . the evidence before the court of [Steven's] further acts of harassment and disturbing [Kristen's] peace during the term of the restraining order, the court concludes that [Kristen] has met her burden of proving by a preponderance of the evidence that she has an objectively reasonable apprehension of future abuse." The court deemed a five-year renewal to be insufficient, and a permanent renewal to be "warranted," based on "the young age of the parties' children, who are 10 and 12, and [Steven]'s apparently ongoing drive to humiliate, punish, and taunt [Kristen]." The court declined to modify the DVRO as requested by Steven, but "without prejudice to [his] ability to seek such modifications at a later time."

7

## DISCUSSION

Steven appeals from the order permanently renewing the DVRO. He argues that the court lacked jurisdiction to renew the DVRO, erred in denying his motion to dismiss on forum non conveniens grounds, and applied the wrong legal standard in assessing Kristen's renewal request, the court's granting of which he claims also is not supported by sufficient evidence. We address each of these arguments in turn below. We conclude the court had jurisdiction to hear the renewal request, correctly concluded Los Angeles was the appropriate forum, and did not reversibly err in renewing the DVRO.

### A. The Family Court Had Subject Matter Jurisdiction to Permanently Renew the DVRO

Steven contends the parties' residence in North Carolina terminated the family court's subject matter jurisdiction over Kristen's DVRO renewal request. Where, as here, the evidence bearing on jurisdiction is undisputed, a determination of subject matter jurisdiction is a legal issue subject to de novo review. (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42 [subject matter jurisdiction is the power of the court over a cause of action or to act in a particular way].)

Steven does not dispute that, at the time the California court granted Kristen's request for the DVRO in 2017, the court had the requisite subject matter jurisdiction, as well as personal jurisdiction over the parties. Nor does Steven contest that personal jurisdiction, if proper at the commencement of an action, remains throughout the duration of the action (Code Civ. Proc., § 410.50, subd. (b)), even if the parties move to another state. (See *In re Marriage of Rassier* (2002) 96 Cal.App.4th 1431, 1435 [Florida court retained personal jurisdiction to address spousal support issue even though

parties had since moved to California].) Steven, contends, however, that the California court lost subject matter jurisdiction over disputes regarding the protective order when the parties moved to North Carolina.

Once properly established at the outset of a lawsuit, "[j]urisdiction of [a] court over . . . the subject matter of an action continues throughout subsequent proceedings in the action." (Code Civ. Proc., § 410.50, subd. (b); see also *Carney v. Resolution Trust Corp.* (5th Cir. 1994) 19 F.3d 950, 954 [subject matter jurisdiction is determined at the time an action is filed].) "[A]n application for an order under the DVPA to restrain a person for the purpose of preventing the recurrence of domestic violence is . . . itself essentially a ' "cause of action" ' [citations] and may properly be considered an independent 'lawsuit' " or " ' "action." ' " (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 335 [citations omitted].) Steven offers no authority for the proposition that, at the time Kristen sought renewal of the DVRO, the restraining order "action" had concluded. Nor would it make sense that the action would conclude before the term of the restraining order had run (which, at the time Kristen sought renewal, it had not). Kristen's renewal request was thus part of "subsequent proceedings" in that action, and the court had subject matter jurisdiction to consider it. (Code Civ. Proc., § 410.50, subd. (b).) The DVRO is also a form of injunction subject to Code of Civil Procedure which grants courts jurisdiction to "modify or dissolve an injunction or temporary restraining order" (*id.*, § 533) or a "final injunction" (Civ. Code, § 3424, subd. (a)) upon a showing that, inter alia, "the ends of justice would be served by the modification or dissolution." (Code Civ. Proc., § 533; Civ. Code, § 3424, subd. (a).)

Steven disputes the general principle that subject matter jurisdiction, once established, continues throughout the course

9

of an action.  He argues that California courts instead should require "continuing subject matter jurisdiction," meaning a court may lose jurisdiction depending on how circumstances evolve throughout the proceedings.  In this case, he argues, California jurisdiction should not continue because both parties lived in North Carolina when Kirsten made her request of the California court.  The case law that Steven relies on, however, involves the Uniform Child Custody Jurisdiction and Enforcement Act, Family Code section 3400 et seq. (the UCCJEA), legislation that determines jurisdiction only in custody or visitation disputes.[6]  (See § 3402, subd. (d) [" '[c]hild custody proceeding' " for purposes of the UCCJEA "means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue"]; *In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037 ["the UCCJEA is the exclusive means of determining subject matter jurisdiction in custody disputes involving other jurisdictions"].)  Nor are we convinced the concept he espouses should be applied in this case absent implementing legislation.

Steven's cases that do not involve the UCCJEA are inapposite.  In *North Alaska Salmon Co. v. Pillsbury* (1916) 174 Cal. 1, the issue was whether the court had jurisdiction at the time the action was filed.  (*Id.* at pp. 2−7.)  That was never disputed in the case at bar.  The issue in *In re Marriage of Amezquita & Archuleta* (2002) 101 Cal.App.4th 1415, 1422 involved a California court's improper modification of an order made by a New Mexico court, over which the New Mexico court had exclusive subject matter jurisdiction pursuant to the Uniform Interstate Family

---

[6] Unless otherwise indicated, all further statutory references are to the Family Code.

10

Support Act, section 5700.101 et seq. *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587—a case that does not involve the parties in the instant matter—dealt with an order implementing a marital settlement agreement provision that " 'for so long as the [s]uperior [c]ourt . . . has jurisdiction over [the parties' autistic child], it shall make such custody, visitation and support orders as are reasonable, necessary and in his best interest.' " (*Id.* at p. 591, italics omitted.) After the autistic child had reached the age of majority and moved to another country, the court issued an order regarding his visitation with a parent. (*Id.* at pp. 591−592.) The Court of Appeal concluded that the lower court lacked jurisdiction to issue such an order, because there is no statutory basis for requiring an adult child to visit a parent, and the court did not have jurisdiction to require such visit on any other basis (such as a guardianship). (*Id.* at pp. 593−594.)

### B.    The Court Did Not Impermissibly Apply California Law to Acts that Occurred in North Carolina

Steven claims that, independent of the jurisdictional issue, his due process rights were violated by the court's application of section 6345, which governs renewal of domestic violence restraining orders. He contends the court in effect granted "extra-territorial effect" to that section. We disagree.

That a protective order issued in California may restrict what North Carolinians may do within the borders of North Carolina is an outcome sanctioned by North Carolina law—not an impermissible extraterritorial application of California law. Specifically, North Carolina law requires that "[a] valid protective order entered by the courts of another state . . . be accorded full faith and credit by the courts of North Carolina whether or not the order has been registered and shall be enforced by the courts and

11

the law enforcement agencies of North Carolina as if it were an order issued by a North Carolina court."[7] (N.C. Gen. Stat. Ann., § 50B-4, subd. (d).)

Steven's reliance on *Bigelow v. Virginia* (1975) 421 U.S. 809, 825 is misplaced. *Bigelow* does not concern an order by a court that had jurisdiction over the parties at the time the action was filed. His other cases are distinguishable for the same reason. (E.g., *State Farm Mutual Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408, 421; *BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 572; *N. Y. Life Ins. Co. v. Head* (1914) 234 U.S. 149, 161.)

### C.   The Court Properly Denied Steven's Forum Non Conveniens Motion to Dismiss

Steven contends that, assuming the family court had jurisdiction, it erred in denying his motion to dismiss on forum non conveniens grounds. We disagree.

"In determining whether to grant a motion based on forum non conveniens, the court first must make a threshold determination whether the alternate forum is a suitable place for trial." (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1036.) The trial court's determination of whether a suitable alternative forum exists is reviewed de novo. (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 436.) North Carolina can only be a suitable alternative forum if it has jurisdiction to hear the dispute. (*Id.* at p. 438.) Steven has not provided us with a record establishing that this is the case. To the

---

[7] California has adopted the Uniform Interstate Enforcement of Domestic Violence Protection Orders Act (§§ 6400–6409), which likewise allows for the enforcement in California of domestic restraining orders entered in other states.

contrary, the current record reflects that, in a declaration Steven submitted below, he stated under penalty of perjury that when Kristen "filed for a renewal of this DVRO in North Carolina, . . . the [c]ourt dismissed the matter for lack of jurisdiction." The declaration further states that Steven was personally present for the hearing in North Carolina at which this occurred. Steven now disputes that this is true, but does not provide us with the North Carolina court's order, nor does he explain why his declaration below provides contrary information. It is Steven's burden to make the threshold showing that North Carolina is a suitable alternative forum, and he has failed to do so.

Even assuming North Carolina is a suitable alternative forum, however, the record does not support that it is more suitable or convenient than California for these parties and this dispute. The parties may be residents of North Carolina now, but their dispute involves an order of the Los Angeles County Superior Court, a court that has an extensive history with the subject of that order—that is, Steven's conduct vis-à-vis Kristen. In addition, the same trial judge that decided the renewal request presided over the February 2018 contempt proceedings, which formed part of the basis for the court's renewal.

The court did not err in denying Steven's motion to dismiss for forum non conveniens.

### D. The Family Court Did Not Reversibly Err in Permanently Renewing the DVRO

The deciding issue before the court in considering Kristen's renewal request was whether Kristen had established, by a preponderance of the evidence, an objectively reasonable apprehension of future abuse. (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1287−1288 (*Ritchie*).) Under this standard, a court must consider the "underlying findings and facts

13

supporting th[e] [original] order," which "often will be enough in themselves to provide the necessary proof to satisfy that test. [¶] Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial protective order." (*Id.* at p. 1291; *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 515−516.) Contrary to Steven's assertion, post-DVRO conduct a court may consider need not rise to the level of abuse or constitute a violation of the DVRO.[8] (See § 6345, subd. (a); *Ritchie, supra,* 115 Cal.App.4th at pp. 1287−1288; *Ashby, supra,* 68 Cal.App.5th at pp. 515–516 [although DVRO violations can support renewal, "compliance with a DVRO [does not] preclude[ ] a finding of reasonable apprehension"]; *Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 561.) Indeed, section 6345 expressly permits a domestic violence restraining order "be renewed . . . *without a showing of further abuse since the issuance of the original order*." (§ 6345, subd. (a), italics added.) Renewal requires only a showing "demonstrat[ing] it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Ritchie, supra,* at p. 1290.)

Based on the incorrect premise that renewal requires a showing of post-DVRO abuse, Steven contends the court applied a "deeply flawed" definition of abuse and therefore applied the incorrect legal standard in renewing the restraining order. Specifically, he argues that the court deemed his conduct since the original DVRO issued—conduct he says does not violate the restraining order and/or was expressly permitted under the custody

---

[8] Of course, a court may only consider conduct proven by admissible evidence, a subject we discuss below in connection with Steven's arguments about evidence of his litigation filings.

and visitation agreement—to be abuse and harassment. First, as noted, reasonable apprehension of future harm does not require a showing of abuse, misconduct, or harassment since the initial DVRO was issued; nor does it require a violation of the original order. Second, Steven selectively quotes from and thereby mischaracterizes the court's order as finding Steven's conduct since the original DVRO issued constituted abuse and harassment. The court's written order, when read in full, demonstrates that the court considered the evidence of harassment that justified the original DVRO, then looked to conduct since the DVRO to determine whether such harassment was likely to continue. It neither required any conduct post-dating the DVRO to meet, nor concluded that it did meet, the legal definitions of harassment and/or abuse.

Steven also contends the court violated his constitutional rights, because it improperly relied on Steven's litigation filings as part of the basis for renewing the restraining order. Assuming, for the sake of argument, that the court erred in considering Steven's petitioning conduct, any such error would be harmless. In arguing to the contrary, Steven claims such error is per se prejudicial, because when a trial court applies the wrong legal standard, it necessarily misunderstands the scope of its discretion. But Steven mischaracterizes the nature of the claimed error. The court correctly identified the issue to be decided and applied the correct standard for deciding it; if it erred at all, it erred by considering petitioning conduct. This is akin to a finder of fact considering inadmissible evidence, an error which is reversible only upon a showing of prejudice. "Claims of evidentiary error under California law are reviewed for prejudice applying the 'miscarriage of justice' or 'reasonably probable' harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836," under which "it is the burden

of appellants to show that it is reasonably probable that they would have received a more favorable result at trial had the error not occurred." (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447.)

Here, any error was harmless because strong admissible evidence unrelated to Steven's petitioning conduct sufficiently supports the court's finding of a reasonable apprehension of future harm, such that it is not reasonably probable that the court would have ruled differently, had it not considered Steven's petitioning conduct. (See *Christ v. Schwartz, supra,* 2 Cal.App.5th at p. 447.) This is because nothing in the record suggests that, since the original DVRO was issued, the parties have "moved on with their lives so far that the opportunity and likelihood of future abuse has diminished." (*Ritchie, supra,* 115 Cal.App.4th at p. 1291.) In addition, as the court noted in its renewal order, the record supports that in 2018, Steven violated the custody and visitation order attached to the DVRO—despite having been previously jailed for such violations—resulting in a judgment of contempt.[9] The court further found this violation was not inadvertent, but rather that Steven took "affirmative steps intended to create 'plausible deniability' for his planned violation." The court also found that, three years after the DVRO was issued, Steven remained motivated to upset and/or lash out at Kristen—so much so that "right under the noses of a judge and a bailiff," he engaged in what the court described as an "obscene gesture" toward Kristen. Thus, evidence of non-petitioning conduct contained in the record affirmatively demonstrates that the same hostilities underlying the original

---

[9] The court's order refers to this as a violation of the "stay away provisions of the restraining order," but the record suggests that this was a violation of the custody and visitation order attached to the DVRO.

DVRO persist, and that Steven is not to be trusted to respect appropriate boundaries or exhibit appropriate behavior when Kristen is involved.

**DISPOSITION**

The order granting a permanent restraining order is affirmed. Kristen is awarded her costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

VOGEL, J.*

---

\* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17